**UNITED STATES of America, and James M. Serling, Estate Tax Attorney, Internal Revenue Service, Petitioners,**

v.

**James M. WHITE, as Attorney for and as the Executor of the Estate of Helen P. Smith, Deceased, Respondent.**

Misc. No. CIV–86–140T.

United States District Court,
W.D. New York.

Jan. 7, 1987.

Jonathan W. Feldman, Asst. U.S. Atty., of Rochester, N.Y., Deborah S. Meland, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for petitioners.

James M. White, Rochester, N.Y., for respondent.

DECISION and ORDER

TELESCA, District Judge.

INTRODUCTION

This action was brought on by the Government's petition for enforcement of

two IRS summonses under 26 U.S.C. § 7402(b) and § 7604(a). An order to show cause was granted, Mr. White filed a Response, and the Government filed a Reply. The Monroe County Bar Association (MCBA) sought and was granted leave to file a brief *amicus curiae,* to which the Government has also filed a Response. As set forth below, I hold that Mr. White should not be compelled to obey the IRS summonses served upon him, and I dismiss this proceeding without prejudice.

## FACTS

Helen P. Smith died on November 10, 1982, leaving a gross estate valued at over $455,000. Her will named respondent James M. White, Esq. as executor of the estate, and in his capacity as executor of the estate, Mr. White chose to act as the attorney for the estate as well. This is a practice permitted under New York Law. Surrogate's Court Procedure Act (SCPA) 2307. He promptly petitioned for probate of the will, and then waited the seven months required under SCPA § 1802 for any claims to be filed before the estate could be closed.

As required, Mr. White as executor filed his federal estate tax return (commonly referred to as the 706 Return). In that return, he claimed a deduction of $16,530 for his attorney's fees. He also claimed a

deduction of some $17,548.13 for the executor's commission to which he was entitled under SCPA § 2307 [1].

Although he had not received a "closing letter" from the IRS, Mr. White petitioned for judicial settlement of the estate.[2] Under SCPA § 2110, attorneys' fees can be fixed by an adversary proceeding [3], or by a judicial settlement if releases have been submitted from all legatees. In the Smith estate, Mr. White submitted releases from all nine [4] residuary legatees, one of whom was an experienced estates lawyer. The releases indicated the legatees' approval of Mr. White's accounting, which included $16,800 for his attorney's fee. After reviewing the accounting and the tax returns, on July 17, 1984, Surrogate Arnold F. Ciaccio granted a decree of judicial settlement of the Smith estate which had the effect of settling the executor's accounting, approving the distribution of assets to those interested in the estate, and fixing and approving the executor's commissions and attorney's fees both of which were due to Mr. White. See SCPA 2307.

On August 7, 1984, petitioner Serling met with Mr. White to review the 706 return. On January 29, 1985, Mr. Serling wrote to Mr. White, stating that the Surrogate Court decree of judicial settlement did not preclude the necessity of his providing

---

1. SCPA 2307 provides in pertinent part that On the settlement of the account of any fiduciary ... the court must allow to him the reasonable and necessary expenses actually paid by him and if he be an attorney of this state and shall have rendered legal services in connection with his official duties, such compensation for his legal services as appear to the court to be just and reasonable and in addition thereto it must allow to the fiduciary for his services as fiduciary ... the following commissions....

2. Under SCPA § 1804, an estate can be judicially settled before the State estate tax is final. Although § 1804 says nothing about Federal estate taxes, Treasury Regulations 20.2053–3(b) and (c) clearly contemplate the filing of the 706 return (and the concomitant deduction of any executor's commissions and attorney's fees) both before and after the decree of judicial settlement. *See also Hartwick College v. United States,* 801 F.2d 608, 613 n. 4 (2d Cir.1986).

3. If such an adversary proceeding had taken place, Mr. White would have been required to file an affidavit detailing his efforts in this matter, under § 2230.29 of the Uniform Calendar and Practice Rules for Surrogate's Courts in the Fourth Department. As of January, 1986, a similar requirement was added by § 207.45 of the Uniform Rules for New York State Trial Courts. *See also, Estate of Gutchess,* 117 A.D.2d 852, 498 N.Y.S.2d 297 (3d Dept.1986), *app. denied,* 68 N.Y.2d 609, 501 N.E.2d 36 (1986) (administratrix of estate is "entitled to be fully apprised of the nature and extent of [the estate attorney's] services").

4. Although Mr. White's Response (¶ 14) indicates that there were nine residual beneficiaries, the MCBA's brief indicates that there were twelve residuary legatees, all of whom submitted releases.

justification for the legal fees claimed. He stated that

> [e]ach case must be determined upon its own facts and circumstances taking into consideration the following factors:
> 1.  Amount involved
> 2.  Time abd [sic] effort of attorney
> 3.  Seriousness of problems
> 4.  Results obtained
> 5.  Experience and ability of attorney
> 6.  Length of administration.

He sought either Mr. White's time records or, if not available, then an itemized list of all legal work performed, time expended for each service and hourly rate charged.

Mr. White then wrote to Surrogate Ciaccio concerning the matter. Surrogate Ciaccio responded by letter to Mr. White dated February 25, 1985. That letter indicates that the executor's commission was fixed by statute, and that the attorney's fee was set:

> in keeping with our ordinary and customary guidelines which have been followed in this Court for several years. Moreover, it conforms to the criteria established by the Court of Appeals in this state as enunciated in *Matter of Freeman*, 34 NY2d 1 [355 N.Y.S.2d 336, 311 N.E.2d 480] and *Matter of Potts*, 241 NY 593 [150 N.E. 568]. I might say, parenthetically, that the attorney fee approved was some $700 less than what would have been approved. I set these matters forth fully aware that you were both executor and attorney for the estate. In those instances, I personally have been careful to attempt to keep the fees for attorney-executors below a full commission. In this particular estate, you have complied. In conclusion, I state to you that a re-review of the file and the account submitted justify in every respect both the commission and fee approval. These are not done in an arbitrary fashion but rather as indicated following the application of the various criteria.

Mr. White forwarded this letter to Mr. Serling with a cover letter dated February 27, 1985.

Not satisfied with this explanation, on May 1, 1985, Mr. Serling issued an IRS summons to Mr. White as executor and attorney for the estate of Helen P. Smith which sought the production of any and all records and documents relating to the administration of the estate of Helen P. Smith, including records of Mr. White's activities both as attorney and as executor. Mr. White responded with a letter dated June 5, 1985, outlining his position and refusing to permit the IRS to examine the file. On December 16, 1985, Mr. Serling wrote to Mr. White, asking him to submit, in affidavit form, a detailed account of the duties he performed in his capacity as executor. By letter dated January 3, 1986, Mr. White responded that the amount of $17,548.13 was for the executor's commissions allowable under SCPA § 2307. On February 3, 1986, Mr. Serling issued another IRS summons to Mr. White, seeking any and all records relating to Mr. White's performance of the duties of executor of the estate of Helen P. Smith.

On July 16, 1986, the IRS issued a form Letter 902(DO), notifying Mr. White that it was assessing a deficiency of $5,754.19 against the estate of Helen P. Smith. Apart from an increase in the value of stocks and bonds in the estate (which was not contested by Mr. White), the deficiency was based principally upon the disallowance of $17,176 in administration expenses, chiefly the entire amount ($16,530) of the attorney's fees claimed as a deduction. The IRS also determined that the claimed executor's commission of $17,450 should be corrected to $16,804. Mr. White states that he has paid the deficiency, with interest, and has filed a notice of claim for a refund. He also states that he does not contest the reduction in the executor's commission.

This enforcement proceeding was commenced August 12, 1986.

## DISCUSSION

At the outset, Mr. White argues that his payment of the deficiency renders this enforcement proceeding moot. How-

ever whether or not Mr. White has paid the deficiency, the issue remains whether the IRS is entitled to his time records so that it can independently determine the amount of any allowable deductions (notwithstanding the Surrogate's prior determination in a judicial proceeding). *See United States v. Gimbel,* 782 F.2d 89, 93 (7th Cir.1986); *United States v. Roundtree,* 420 F.2d 845, 847 n. 3 (5th Cir.1970); *see also Multistate Tax Commission v. United States Steel Corp.,* 714 F.2d 925 (9th Cir.1983), *and Marshall v. Stevens People and Friends For Freedom,* 669 F.2d 171, 174 (4th Cir. 1981), *cert. dismissed,* 455 U.S. 930, 102 S.Ct. 1297, 71 L.Ed.2d 639 (1982), *and cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982). *Cf. Carr v. United States,* 663 F.2d 59 (8th Cir.1981), *United States v. Kis,* 658 F.2d 526, 532–35 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982), *United States v. First American Bank,* 649 F.2d 288 (5th Cir.1981), *and United States v. Silva and Silva Accountancy Corp.,* 641 F.2d 710 (9th Cir.1981) (actual compliance with an IRS summons *would* render an enforcement action moot); *but cf. Gluck v. United States,* 771 F.2d 750, 753–54, n. 3 (3d Cir.1985) (*contra*). Accordingly, the petition will not be dismissed as moot.

To enforce a summons, the IRS must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. MacKenzie,* 777 F.2d 811, 819 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986). For the reasons set forth below, I conclude that the IRS has not made the necessary showing that the investigation will be conducted pursuant to a legitimate purpose. ▮ The statute which governs the IRS's ability to determine the deductibility of estate administrative expenses is 26 U.S.C.

§ 2053(a), which permits the deduction of administrative expenses in "such amounts ... as are allowable by the laws of the jurisdiction ... under which the estate is being administered." An associated Treasury Regulation, § 20.2053–1(b)(2), sets forth the IRS policy in more detail:

(2) *Effect of court decree.* The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant....

This statute and regulation were at issue in *Estate of Smith v. Commissioner,* 510 F.2d 479 (2d Cir.1975), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). In *Smith,* the Second Circuit affirmed a determination of the Tax Court that no more than $750,447.74 in sales commissions were "necessary" to liquidate the estate of a sculptor, even though the Surrogate's Court of Warren County, New York had

approved the payment of almost $1.6 million in commissions. Citing the above-noted Treasury Regulation, the Second Circuit stated that

[n]ormally, therefore, a Surrogate's court decree approving expenditures by an executor as proper administrative expenses under New York law will be controlling and will not raise questions concerning possible discrepancies between § 2053 of the Internal Revenue Code of 1954 and Treas.Reg. § 20.2053-3(d)(2).

*Id.* at 482.

Although in *Smith* the Commissioner and the Tax Court had each made a *de novo* inquiry into the factual necessity for the expenditures, they did so because the expenditures had not been undertaken on the estate's behalf, but rather on behalf of testamentary trusts. (Mr. Smith's will had contemplated a distribution of the sculptures in kind to the trusts for the benefit of his daughters.) *Estate of David Smith,* 57 T.C. 650 (1972). It was not a case in which the Commissioner and the Tax Court refused to follow state law which by all appearances had been properly applied by the state court, as here. The Tax Court's determination in *Smith* that only about half the sales commissions were "necessary" either to preserve the estate or pay its debts was consistent with § 11-1.1 of the New York Estates, Powers and Trusts Law (EPTL) and Treas.Reg. 20.2053-3(d)(2). Compare Treas.Reg. 20.2053-3(c)(3).

The Government points to footnote 4 in *Smith,* in which the Second Circuit quoted from the Fifth Circuit's decision in *Pitner v. United States,* 388 F.2d 651 (1967):

"[i]n the determination of deductibility under section 2053(a)(2), it is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an 'administrative expense' within the meaning of that term as it is used in the statute, *and that the amount sought to be deducted be reasonable under the circumstances. These are both questions of federal law* and establish the outside limits for what may be considered allowable deductions

under section 2053(a)(2)." 388 F.2d at 659.

(Emphasis added.) The Government argues from this that, in the Second Circuit, the question of the amount of a deduction is a federal question which is the proper subject of an IRS inquiry.

The Government has placed undue emphasis upon this footnote. The text which the footnote accompanies indicates that the Second Circuit had declined to adopt the Surrogate's computation of commissions because the interest of the federal government (in taxing the passage of property) had not been completely or accurately reflected in the State's interests (in supervising the fiduciary responsibilities of the executor). In particular, the Second Circuit noted that there was a question as to whether some of the expenses were in fact incurred for the benefit of the estate (in accordance with the general purpose of 26 U.S.C. § 2053), or instead were incurred for the benefit of the individual beneficiaries. The Court concluded that:

[i]n such circumstances, the federal courts cannot be precluded from reexamining a lower state court's allowance of administration expenses to determine whether they were in fact necessary to carry out the administration of the estate or merely prudent or advisable in preserving the interests of the beneficiaries.

510 F.2d at 482–83 (citations omitted).

In this case, SCPA 2307 provides for the method of calculating executor's commissions. Thus if the statute is followed the deduction claimed for executor's commissions is "reasonable" within the meaning of *Pitner.* The same statute specifically provides that the Surrogate allow to the executor, if he be an attorney, a fee *"as appears to the Court* to be just and reasonable ..." (emphasis added).

In this case, Surrogate Ciaccio had before him Mr. White's accounting, as well as the Federal and State estate tax returns, when he approved the amount of Mr. White's attorney fee as being "just and reasonable." As he stated in his February 25, 1985 letter, he applied the criteria from

*Matter of Freeman*, 34 N.Y.2d 1, 355 N.Y. S.2d 336, 311 N.E.2d 480 (1974), and *Matter of Potts*, 241 N.Y. 593, 150 N.E. 568 (1925), in setting the amount of Mr. White's attorney's fee. *Freeman* sets forth the following factors to be used in fixing an attorney's fee:

1. Time and labor required;
2. The difficulty of the questions involved;
3. The skill required to handle the problems presented;
4. The lawyer's experience, ability and reputation;
5. The amount involved and benefit resulting to the client from the services;
6. The customary fee charged by the Bar for similar services;
7. The contingency or certainty of compensation;
8. The results obtained;
9. The responsibility involved.

34 N.Y.2d at 9, 355 N.Y.S.2d 336, 311 N.E.2d 480. The six factors which Mr. Serling would have the IRS consider are all included among the factors listed in *Freeman*. Under Treas.Reg. 20.2053–1(b)(2), then, the Surrogate having passed upon the facts upon which deductibility depends, the decision of the Surrogate should be accepted.[5]

It appears that the IRS is claiming the right to second guess the decision of the Surrogate on commissions and attorneys' fees under *any* circumstances. Such a position not only represents a misreading of the *Smith* holding, but is also "destructive ... of the proper relationship between State and Federal law...." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 480, 87 S.Ct. 1776, 1790, 18 L.Ed.2d 886 (Harlan, J., dissenting) (1967).

The Surrogate's Court in New York State, and not the IRS or the U.S. District Court, is exclusively authorized by New York law to determine the appropriate award of attorneys fees in the probating of an estate. The factors that the IRS would have this Court consider are all factors which the Surrogate *does* consider under *Freeman* and *Potts*. State courts "have an especially strong interest and a well-developed competence" to adjudicate these matters, *Giardina v. Fontana*, 733 F.2d 1047 (2d Cir.1984); *see also, Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 31–32 (2d Cir.1986), so much so that the federal courts have created their own exception to diversity jurisdiction for probate matters. *Id.; see also Byers v. McAuley*, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867 (1893); *In re Broderick's Will*, 21 Wall. (88 U.S.) 503, 22 L.Ed. 599 (1875); *Hook v. Payne*, 14 Wall. (81 U.S.) 252, 20 L.Ed. 887 (1872).

Respect for the considered judgment of state courts has been expressed by federal courts over the years for other reasons as well. This respect has been based upon the courts' sense of comity and federalism, *see, e.g., Webb v. Webb*, 451 U.S. 493, 499–500,

---

**5.** The Monroe County Bar Association urges that I follow the holdings of *Estate of Park v. Commissioner of Internal Revenue*, 475 F.2d 673 (6th Cir.1973), and *Estate of Jenner v. Commissioner of Internal Revenue*, 577 F.2d 1100, 1106–07 (7th Cir.1978), and hold that, if a state probate court has determined that a particular expense is "necessary" to the administration of an estate, its determination would not be subject to review by the IRS. The MCBA argues that the Second Circuit effectively adopted this approach when it affirmed without opinion the decision in *Estate of Vatter v. Commissioner of Internal Revenue*, 65 T.C. 633 (1975), aff'd., 556 F.2d 563 (1976). The MCBA also points out that this approach was adopted by the United States District Court in Nevada in *Bank of Nevada v. United States*, 80–2 U.S.T.C. ¶ 13,361 (1980). The Government argues that the MCBA misconstrues *Vatter*, and that *Park, Jenner*, and *Bank of Nevada* do not represent the law in this circuit as articulated in the *Smith* case.

I agree with the Government that *Smith*, not *Park, Jenner*, and *Bank of Nevada*, represents the law in this circuit. I also agree that the Tax Court in *Vatter* properly distinguished that case from *Smith*, because in *Vatter* the property in question had not been specifically devised or intended to be distributed in kind (so that the executrix was acting on behalf of the estate, not the beneficiaries, when she sold the property). Nevertheless, I believe that, under *Smith*, the IRS can review a probate court's determination that a particular expense is "necessary," but only if it first makes a showing that the probate court has, for some reason (such as fraud), not passed on the factors on which deductibility depends.

101 S.Ct. 1889, 1893, 68 L.Ed.2d 392 (1981); *Juidice v. Vail,* 430 U.S. 327, 334–36, 97 S.Ct. 1211, 1216–17, 51 L.Ed.2d 376 (1977); *423 South Salina Street, Inc. v. City of Syracuse,* 724 F.2d 26, 27 (2d Cir.1983); a view of the states as "laboratories for social and economic experiments," *Johnson v. Louisiana,* 406 U.S. 356, 376, 92 S.Ct. 1620, 1636, 32 L.Ed.2d 152 (1972) (Blackmun, J., concurring); *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 386, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting); the Eleventh Amendment, *Pennhurst State School & Hosp. v. Haldermann,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984); the Full Faith and Credit statute (28 U.S.C. § 1738), *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Bottini v. Sadore Management Corp.,* 764 F.2d 116 (2d Cir.1985); and federal common-law rules of preclusion. *University of Tennessee v. Elliott,* — U.S. —, 106 S.Ct. 3220, 3224, 3226–27, 92 L.Ed.2d 635 (1986).[6]

Justice Black described the notion of comity and the principle of federalism in *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971) as follows:

> ... that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

In this case, the interests of the State (in determining how an attorney and an executor should be compensated for handling the probate of an estate) must be balanced against the interests of the IRS in enforcing the federal tax laws. I believe the proper balance was drawn by Justice Harlan in 1967:

> The interests of the federal treasury are essentially narrow here; they are entirely satisfied if a considered judgment is obtained from either a state or a federal court, after consideration of the pertinent materials, of the requirements of state law.... [T]he federal interest requires only that the Commissioner be permitted to obtain from the federal courts a considered adjudication of the relevant state law issues in cases in which, for whatever reason, the state courts have not already provided such an adjudication. In turn, it may properly be assumed that the state court has had an opportunity to make, and has made, such an adjudication if, in a proceeding untainted by fraud, it has had the benefit of

---

**6.** The Full Faith and Credit Statute, and federal common-law rules of preclusion, apply to disputes between the same parties, or of which a party has at least had notice and an opportunity to fully present its claims. The Government has not raised the point that the IRS did not have notice of the judicial settlement proceeding or

an opportunity to be heard therein, and this factor was not addressed by the Second Circuit in the *Smith* case. This is presumably because (as Justice Harlan noted in his dissent in the *Bosch* case) this is not a *res judicata* or collateral estoppel question. 387 U.S. at 475, 87 S.Ct. at 1787.

reasoned argument from parties holding genuinely inconsistent interests.

*Commissioner v. Estate of Bosch, supra,* 387 U.S. at 480–481, 87 S.Ct. at 1790.[7]

■ I hold that the IRS cannot second-guess the decision of the Surrogate when the Surrogate has passed upon the critical facts upon which deductibility depends. To challenge such a decision, the IRS must first make a *prima facie* showing that the Surrogate's decision was motivated by factors other than those on which deducti-

bility depends, such as fraud, overreaching, or excessiveness by the attorney or the Surrogate.[8] The IRS has not done so here.

I do not consider the fact that Mr. White acted as executor and attorney for the estate to be by itself evidence of fraud, overreaching, or excessiveness. That dual role is clearly permitted pursuant to SCPA 2307.[9] Whether or not that practice should continue is a matter for the New York State Legislature to decide, not Federal Court.[10]

---

**7.** I recognize that Justice Harlan's opinion in *Bosch* was a dissenting opinion, and that the majority in *Bosch* held that a state trial court decision would not be binding on the IRS if the IRS had not been made a party. The majority opinion in *Bosch,* however, is distinguishable in at least two respects. First, *Bosch* involved a section of the Code for which the legislative history indicated only that "proper regard" should be given to a state probate court determination, and then only when entered by a court "in a bona fide adversary proceeding." 387 U.S. at 464, 87 S.Ct. at 1787. By contrast, the Code section and regulations at issue in this case specify that the probate court decision will ordinarily be accepted, even if rendered by consent, if the court passes upon the facts upon which deductibility depends. Second, unlike *Bosch,* there has been a determination of the relevant New York law not merely by the trial court, but also by the highest court in the state, in *Freeman* and *Potts.*

Moreover, the underlying substantive rule in this case is based on state law and this State's highest court is the best authority on its own law. 387 U.S. at 465, 87 S.Ct. at 1782. The issue is the reasonableness of an attorney's fee and the executor's commission claimed as deductions in an estate administration proceeding. Both fees are determined by State law. Both are allowed by State statute, SCPA 2307. The executor's commission is computed by a formula contained in that statute. The attorney's fee is controlled by a standard set forth by the holding of cases before the state's highest court, *Matter of Freeman* and *Matter of Potts.* As to the standard of review of a Surrogate's exercise of discretion in fixing attorney's fees, "the statute, the cases, and the treatises suggest that the fixation of fees ... [is] discretionary without further analysis [citations omitted]." *In Re Estate of Aaron,* 30 N.Y.2d 718, 720, 332 N.Y.S.2d 891, 283 N.E.2d 764 (1972). The Surrogate of Monroe County properly applied the statutory and caselaw, and thus his determination would not even have been reviewable in State court, under *Aaron.* By contrast, in *Bosch,* the Probate Court of Connecticut had to make a substantive determination of the term "marital deduction" as it applied in a federal estate tax

statute. *See Gallagher v. Smith,* 223 F.2d 218, 222–23 (3d Cir.1955); *Estate of Bullock,* 19 T.C.M. 1080 (1960). Thus *Bosch* supplies no authority for the IRS to seek review of the Surrogate's decision in federal court, particularly when it could not do so in state court.

In the instant case the issue is not one of interpreting federal law. It is a case of federal tax authorities refusing to accept the determination of a state court of a matter involved in state administration and clearly dealt with in state law. Thus, the *Bosch* case is distinguished from the instant case. In fact, under *Bosch,* because the underlying substantive rule involved is based on state law and the state's highest court has passed on the issue, then "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." 387 U.S. at 465, 87 S.Ct. at 1782. The federal court then sits as a state court by application of the rule of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Id.*

**8.** By analogy, New York statutory and case law is very clear on the circumstances (including fraud, newly discovered evidence, or clerical error) under which a Surrogate's order can be attacked. *See, e.g.,* SCPA § 209; *In re Estate of Chodikoff,* 54 Misc.2d 785, 786, 283 N.Y.S.2d 555 (Surr.Ct., Rensselaer County 1967); *In re Estate of Heller,* 33 Misc.2d 798, 226 N.Y.S.2d 260 (Surr.Ct., N.Y.County, 1962).

**9.** An attorney/executor must differentiate between the services performed in each capacity when seeking court approval of fees. *See In re Tuttle's Will,* 4 A.D.2d 310, 164 N.Y.S.2d 573 (4th Dep't 1957), *aff'd,* 4 N.Y.2d 159, 173 N.Y.S.2d 279, 149 N.E.2d 715 (1988). The reported cases collected in the Supplementary Practice Commentaries to SCPA § 2110 (McKinneys) reflect what can fairly be described as a heightened scrutiny by Surrogates for fee applications from attorney/executors.

**10.** The MCBA has also argued that, because the IRS's interpretation of the Treasury Regulations

**912**

## CONCLUSION

For the reasons set forth above, the Government's motion for an order compelling enforcement of its summonses is denied, and this enforcement proceeding is dismissed. This dismissal is without prejudice, however, to a refiling by the Government should it determine that there is *prima facie* evidence of fraud, overreaching, or some other reason to believe that the Surrogate has not passed on the factors upon which deductibility depends in this case. That burden is upon the Government.

In the absence of such evidence, the IRS must respect a decision of a Surrogate setting the amount of the attorneys' fees and the executors' commissions set forth in a proceeding judicially settling the estate and which fees (on their face) are fully in accord with the requirements of the state law, particularly where that determination takes into account all of the factors which the IRS itself would consider. The fees, having been determined in a state court proceeding by the proper application of the relevant state law which is untainted by fraud, must be respected and accepted by this Court as well as the IRS.

■ The administration of estates is an area traditionally reserved to the states, and federal laws dealing with the taxation of decedents' estates must accommodate and yield to judicial determinations made under state law by state courts. This is not a new doctrine. An important aspect of our Constitutional blueprint creates and respects certain spheres of authority, and leaves to the people of the states in the Tenth Amendment those responsibilities and rights not committed to federal care.

ALL OF THE ABOVE IS SO ORDERED.

is inconsistent with the plain language of the Tax Code, the regulations are invalid. As set forth above, I believe the Regulations to be consistent with the Tax Code, and the IRS's interpretation of the Regulations to be incorrect. Accordingly, like the Second Circuit in *Smith,* 510 F.2d at 483, and the Tax Court in *Vatter,* 65 T.C. 633, fn. 5, I find it unnecessary to pass on whether Treas.Reg. § 20.2053–3 is invalid.