853 F.2d 107
 62 A.F.T.R.2d 88-5972, 57 USLW 2111, 88-2
USTC P 13,777
 UNITED STATES of America, and James M. Serling, Estate Tax
Attorney, Internal Revenue Service, Petitioners-Appellants,
v.
James M. WHITE, as attorney for and as executor of the
Estate of Helen P. Smith, deceased, Respondent-Appellee.
 No. 83, Docket 87-6046.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 3, 1987.
Decided Aug. 2, 1988.
 
 Joan I. Oppenheimer, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C. (Roger P. Williams, U.S. Atty., W.D.N.Y., Buffalo, N.Y., Roger M. Olsen, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Michael L. Paup, Charles E. Brookhart, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., of counsel), for petitioners-appellants.
 James M. White, Rochester, N.Y. (Kenneth A. Payment, A. Paul Britton, Harter, Secrest & Emery, Rochester, N.Y., of counsel), for respondent-appellee.
 Charles E. Heming, New York City, Maryann S. Freedman, Buffalo, N.Y. (Arthur M. Sherwood, Buffalo, N.Y., Jonathan G. Blattmachr, Sanford J. Schlesinger, New York City, Jules J. Haskel, Garden City, N.Y., John W. Tarbox, Rochester, N.Y., of counsel), for the New York State Bar Ass'n.
 Robert M. Kaufman, New York City (George DeSipio, Albert Kalter, New York City, of counsel), for the Ass'n of the Bar of the City of New York, submitted briefs as amici curiae.
 Edward D. Bloom, Esq., Harris, Beach, Wilcox, Rubin & Levey, Michael F. Buckley, Harter, Secrest & Emery, John L. Garrett, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for the Monroe County Bar Ass'n submitted a brief as amicus curiae.
 Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 The United States of America and James M. Serling, an estate tax attorney in the Internal Revenue Service ("IRS" or the "government"), appeal from a judgment of the United States District Court for the Western District of New York, Michael A. Telesca, Judge, which denied appellants' petition for an order enforcing two IRS summonses issued to the respondent, James M. White, an attorney. United States v. White, 650 F.Supp. 904 (W.D.N.Y.1987). The district court found that the IRS had failed to show that the summonses were issued pursuant to a legitimate tax purpose, as is required for summons enforcement under United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). According to the court, the IRS was foreclosed from investigating the deductibility of White's attorney's fees, as claimed on a federal estate tax return, because of a prior New York State Surrogate's Court decree that had approved White's attorney's fees under New York law. The district court held that, because (1) "the Surrogate ... passed on the facts upon which deductibility depends," 650 F.Supp. at 909; and (2) the IRS did not make a prima facie showing that the Surrogate's decision was motivated by impermissible factors "such as fraud, overreaching, or excessiveness by the attorney or the Surrogate," the IRS was therefore bound by the Surrogate's decision. Id. at 911.
 
 
 2
 We believe that the district court erred in concluding that the Surrogate's decree precludes the IRS from investigating the deductibility of White's attorney's fees. Because the objective of the investigation was to obtain information that may be used in determining whether there is federal tax liability, the IRS had a legitimate purpose for issuing its summonses under Powell. Moreover, we find the district court's summons enforcement requirement that the IRS must make a prima facie showing of "fraud, overreaching, or excessiveness by the attorney or the Surrogate" to be inconsistent with Powell 's holding that only a showing of a legitimate purpose, and not a showing of probable cause, is required for summons enforcement of its summonses and we therefore reverse.
 
 BACKGROUND
 
 3
 The facts of this case are set forth in full in the district court's opinion, reported at 650 F.Supp. 904. We refer herein only to those facts necessary to address the issues presented on appeal. In July 1984, the Surrogate's Court of Monroe County, New York, granted a decree of judicial settlement of the Estate of Helen P. Smith. Under New York law, see N.Y.Surr.Ct.Proc.Act Sec. 2307 (McKinney 1967 & Supp.1988), this decree had the effect, inter alia, of approving attorney's fees of $16,800 and an executor's commission of $17,548.13. James M. White, the respondent-appellee, was both the executor and the attorney for the estate. He filed a federal estate tax return which claimed deductions of $16,530 for his attorney's fees and $17,450 as the executor's commission.
 
 
 4
 In August 1984, petitioner-appellant James M. Serling, a tax attorney for the IRS, met with White to review the estate tax return. White informed Serling that the Surrogate had signed a judicial decree of settlement for the estate. In January 1985, Serling wrote to White requesting his time records or other documentation of legal work undertaken for the estate, stating that White was required to provide justification for his attorney's fees notwithstanding the Surrogate's decree. In February 1985, White responded by forwarding a letter he had obtained from the Surrogate which stated that White's attorney's fees were valid under New York law.
 
 
 5
 Pursuant to the IRS's summons authority under Sec. 7602 of the Internal Revenue Code of 1954 ("I.R.C." or the "Code"), 26 U.S.C. Sec. 7602 (1982), Serling then sent two summonses to White, one in May 1985 and one in February 1986. The May 1985 summons sought all records and documents relating to the administration of the estate, including records of White's activities as attorney and as executor. The February 1986 summons sought all records relating to White's performance of his duties as executor of the estate. White refused to comply with the summonses, relying on the Surrogate's prior approval of his attorney's fees under New York law. Based on this refusal, the IRS issued a deficiency notice to White on behalf of the estate in July 1986 which disallowed the claimed attorney's fees and reduced the executor's commission from $17,450 to $16,804. Apparently, White does not contest the reduction in the executor's commission. White paid the deficiency in the amount of $5,754.19 and filed a notice of claim for a refund; that claim in not presently before this Court.
 
 
 6
 Appellants commenced this summons enforcement proceeding in August 1986. In January 1987, the district court, in a thorough opinion, denied the petition for enforcement of the two summonses principally on the ground that the IRS did not show that the investigation would be conducted for a legitimate purpose as required by Powell. The Code permits a deduction to be taken for estate administrative expenses allowable under state law, see I.R.C. Sec. 2053(a)(2), and an associated regulation ordinarily makes state court decrees related to the allowability of such expenses binding on the IRS if the court "passed upon the facts upon which deductibility depends," see Treas.Reg. Sec. 20.2053-1(b)(2). The district court concluded that "the IRS cannot second-guess the Surrogate" when the Surrogate has found such expenses to be valid under state law unless the IRS makes "a prima facie showing that the Surrogate's decision was motivated by factors other than those on which deductibility depends, such as fraud, overreaching, or excessiveness by the attorney or the Surrogate." 650 F.Supp. at 911. Without such a standard to support enforcement of these summonses, the district court stated, IRS investigations of amounts approved by state courts " 'would be destructive ... of the proper relationship between State and Federal law.' " Id. at 909 (quoting Commissioner v. Estate of Bosch, 387 U.S. 456, 480, 87 S.Ct. 1776, 1790, 18 L.Ed.2d 886 (1967) (Harlan, J., dissenting)). Finding that the IRS failed to meet this standard, the district court held that "the decision of the Surrogate should be accepted [by the IRS]." Id. Concluding therefore that the IRS had no legitimate purpose in investigating the deductibility of fees previously approved by the Surrogate, the district court denied the government's petition for summons enforcement and the government appealed.
 
 DISCUSSION
 
 7
 * The issue presented to us is whether the IRS may investigate expenses claimed as a deduction on a federal estate tax return, and obtain enforcement of summonses issued to carry out such an investigation, where the subject expenses previously had been approved under state law by a state trial court. The government argues that the district court erred in denying its petition for summons enforcement because the summonses were validly issued under the authority of Sec. 7602 of the Internal Revenue Code of 1954 and because the IRS had met its burden of showing that they were issued for a legitimate investigative purpose, in accordance with the requirements of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), for judicial enforcement of summonses.
 
 
 8
 The IRS is authorized to issue summonses, inter alia, "to examine any books, papers, records, or other data which may be relevant or material" to an inquiry " [f]or the purpose of ascertaining the correctness of any return." I.R.C. Sec. 7602. In enacting Sec. 7602 of the Code, Congress endowed the IRS with "expansive information-gathering authority" in order to encourage effective tax investigations. United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984). Because this summons authority is "necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code," United States v. Euge, 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980), the Supreme Court has consistently held that restrictions on the IRS's summons power should be avoided "absent unambiguous directions from Congress." United States v. Bisceglia, 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975); see also Euge, 444 U.S. at 711, 100 S.Ct. at 878 (the summons authority "should be upheld absent express statutory prohibition or substantial countervailing policies").
 
 
 9
 In Powell, the Supreme Court set forth the standards to be met by the IRS in order to obtain judicial enforcement of a summons. In that case, the IRS had issued a summons for the records of a taxpayer whose returns had been previously examined and where the federal three-year statute of limitations barred assessment of additional deficiencies except in cases of fraud. 379 U.S. at 49, 85 S.Ct. at 250-51. The taxpayer refused to obey the summons, claiming that the IRS must first show probable cause to suspect fraud. Id. The Court rejected this contention and held that, in order to obtain summons enforcement, the IRS need only show that: (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Code have been followed. Id. at 57-58, 85 S.Ct. at 255. Any other standard, the Court stated, "might seriously hamper the Commissioner in carrying out investigations he thinks warranted." Id. at 54, 85 S.Ct. at 253.
 
 
 10
 According to Powell, the government establishes a prima facie case for summons enforcement by demonstrating compliance with these standards; the burden then shifts to the taxpayer to challenge these showings "on any appropriate ground," including a showing that the summons had been issued for an improper purpose, such as to harass the taxpayer, to put pressure on him to settle a collateral dispute, or "for any other purpose reflecting on the good faith of the particular investigation." Id. at 58, 85 S.Ct. at 255; see also United States v. LaSalle Nat'l Bank, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978); United States v. Antonio J. Sancetta, M.D., P.C., 788 F.2d 67, 71 (2d Cir.1986). If the taxpayer sustains this burden of demonstrating a failure by the government to meet the four Powell criteria, then the court should deny enforcement of the summons, since any other result would constitute an abuse of the court's process. Powell, 379 U.S. at 58, 85 S.Ct. at 255. If the taxpayer fails to meet his burden, then enforcement should be granted. Id.
 
 
 11
 Subsequent cases have held that the government's burden of proof of its compliance with the Powell standards is minimal, see United States v. Davey, 543 F.2d 996, 1000 (2d Cir.1976); United States v. Balanced Financial Management, Inc., 769 F.2d 1440, 1443 (10th Cir.1985), and that the government may even establish its prima facie case by the affidavit of an agent involved in the investigation averring each Powell element. See Alphin v. United States, 809 F.2d 236, 238 (4th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 1578, 94 L.Ed.2d 768 (1987); United States v. Kis, 658 F.2d 526, 536 (7th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). In contrast, the taxpayer's burden of proof to establish that enforcement would be improper is significantly greater than the burden on the government to show a legitimate purpose. Kis, 658 F.2d at 535. In the words of the Supreme Court, the taxpayer's burden is a "heavy" one, which he must meet by "disprov[ing] the actual existence of a valid civil tax determination or collection purpose by the Service." LaSalle, 437 U.S. at 316, 98 S.Ct. at 2367.
 
 
 12
 The imposition of a heavier burden on the taxpayer in a summons enforcement proceeding is intended to facilitate the IRS's investigative process. Kis, 658 F.2d at 535. Summons enforcement proceedings are intended to be summary in nature so that an investigation can advance to an ultimate determination as to whether tax liability exists. Id. These proceedings generally occur at the early investigative stage of any tax inquiry involving a taxpayer, when no guilt or liability of the taxpayer has been established. Id. Therefore, the primary issue presented by a summons enforcement proceeding is not whether the IRS has established, or is even likely to establish guilt or liability on the taxpayer's part; rather, the issue is whether the IRS had a valid tax determination or collection purpose in issuing its summons.
 
 II
 
 13
 In determining the enforceability of the summonses herein, we must consider whether the government met the four-part test under Powell, and, if it did, whether White demonstrated that enforcing the summonses would constitute an abuse of the court's process. We consider first whether the government met its burden of proof under Powell.
 
 A. The Government's Burden of Proof
 
 14
 The government's petition for enforcement was supported by IRS Agent Serling's affidavit, which averred that (1) the purpose of his investigation was to determine the correct tax liability of the Estate of Helen P. Smith; (2) the summoned books and records were necessary for this purpose; (3) the books and records were not already in the possession of the IRS; and (4) the administrative steps required by the Code had been followed. Just on the basis of this affidavit, it is clear that the government did establish a prima facie case for enforcement. See, e.g., Sancetta, 788 F.2d at 71; United States v. Beacon Hill Fed. Sav. & Loan, 718 F.2d 49, 52 (2d Cir.1983); Kis, 658 F.2d at 536-37.
 
 
 15
 The declared purpose of the subject investigation is unquestionably legitimate under Sec. 7602, which authorizes the issuance of summonses "[f]or the purpose of ascertaining the correctness of any return." Contrary to White's argument that the purpose must be stated with more specificity, the IRS is required to declare only a "good-faith pursuit of the congressionally authorized purposes of Sec. 7602," LaSalle, 437 U.S. at 318, 98 S.Ct. at 2368. This we believe the IRS has done.
 
 
 16
 With regard to relevance, White's books and records relating to legal work performed for the estate are clearly relevant to the IRS's declared purpose under Sec. 7602, which authorizes the issuance of a summons for books and records "which may be relevant ... to such inquiry" (emphasis added). See also Arthur Young, 465 U.S. at 814, 104 S.Ct. at 1501 ("The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation....") (emphasis in original); Davey, 543 F.2d at 1000 (the test of relevance is whether the inspection might throw light on the correctness of the taxpayer's return). Serling's remaining declarations, that the IRS does not have White's records in its possession, and that the proper administrative procedures have been followed, satisfy the remaining Powell criteria.
 
 
 17
 B. Non-existence of a Valid Tax Determination Purpose
 
 
 18
 Once the government has established a prima facie case for enforcement, the burden shifts to the taxpayer to disprove the existence of a valid tax determination purpose for the IRS inquiry. Powell, 379 U.S. at 58, 85 S.Ct. at 255. It is at this stage that we consider White's challenge to the legitimacy of the IRS's declared purpose and "inquire into the underlying reasons for the examination." Id. at 58, 85 S.Ct. at 255. To ascertain whether White has met his "heavy" burden in this regard, we turn to White's claim that no legitimate purpose exists for the IRS investigation.
 
 
 19
 White argues in essence that, in light of the Surrogate's prior approval of his attorney's fees, the IRS has no legitimate purpose in summoning his books and records because the Surrogate's decision is binding on the IRS. We note that this case does not involve any allegation of a lack of "good faith" by the IRS, in the sense that White does not claim that the IRS issued the summonses to harass him or to pressure him into settling a collateral dispute. Nor does White assert that the Surrogate's decree is binding on the IRS based on the full faith and credit provision of 28 U.S.C. Sec. 1738, or based on principles of res judicata and collateral estoppel. Rather, he asserts that, as a matter of law, there is no need for him to produce his records because the IRS is constrained by relevant Code and regulatory provisions to accept the Surrogate's decree.
 
 
 20
 In agreeing with White that the IRS is bound by the Surrogate's decree, the district court relied primarily on Treas.Reg. Sec. 20.2053-1(b)(2) and not its associated statute, I.R.C. Sec. 2053(a)(2). Nonetheless, we must first examine the statute to determine whether there exists evidence of "unambiguous directions from Congress," Bisceglia, 420 U.S. at 150, 95 S.Ct. at 921, restricting the IRS's summons power when a state court applying state law has found "allowable" the attorney's fees that are the subject of IRS scrutiny.
 
 1. I.R.C. Sec. 2053(a)(2)
 
 21
 Section 2053(a) of the Code sets forth certain deductions allowable in determining the value of a taxable estate. In relevant part, Sec. 2053(a) authorizes deductions of such amounts for administrative expenses "as are allowable by the laws of the jurisdiction ... under which the estate is being administered." I.R.C. Sec. 2053(a)(2). White interprets the statute as making state court decrees which approve administrative expenses under state law conclusive and binding on the IRS; this, by inference, would render subsequent tax investigations of such expenses pointless.
 
 
 22
 We do not read the statute as giving state trial court decrees preclusive effect with regard to IRS investigations. To be sure, the plain language of Sec. 2053(a)(2) indicates that the federal deductibility of estate administrative expenses is governed by state law. Thus, under this statute, the state rules applicable to the allowability of these expenses have been "absorbed" as the relevant federal rules relating to the deductibility of such expenses. See C. Wright, The Law of Federal Courts Sec. 60, at 94-95 (4th ed. 1983) ("sometimes the federal statute will direct that state law be applied," in which case "the state rule has merely been absorbed as the relevant federal rule"). Although the statute directs the IRS and federal courts to apply state rules, the deductibility of such expenses nonetheless remains a federal question. The statute does not address the effect of state trial court approval of estate administrative expenses on the deductibility of such expenses under federal law. In the absence of preclusive language in the statute, we are not persuaded that Congress unambiguously intended to make state trial court decrees determinative of the federal deductibility of such expenses to the exclusion of any federal inquiry.
 
 
 23
 Moreover, any suggestion that Congress intended to preclude IRS investigation into the deductibility of White's fees under state law is untenable in light of the Supreme Court's reasoning in Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In Bosch, the Supreme Court addressed the problem of what effect must be given a state trial court decree where the issue addressed by such decree has federal estate tax consequences. Id. At issue in Bosch was a federal estate tax deduction whose validity under I.R.C. Sec. 2056(b)(5) depended on the invalidity under state law of an instrument executed by the decedent's wife. In a separate proceeding, to which the IRS was not a party, a state trial court held the instrument invalid, which conclusion was disputed by the IRS with regard to the claimed federal estate tax deduction.
 
 
 24
 In considering the effect of the state court determination in a subsequent federal tax proceeding, the Supreme Court found that Congress, in enacting I.R.C. Sec. 2056(b)(5), had intended to give "proper regard" and not "finality" to the interpretations of state law by state trial courts. "If the Congress had intended state trial court determinations to have [a conclusive and binding] effect on the federal actions, it certainly would have said so--which it did not do." 387 U.S. at 464, 87 S.Ct. at 1782. Using diversity cases as its guide, the Bosch Court applied the rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that a federal court will give effect to a state court decree, if at all, "only after independent examination of the state law as determined by the highest court of the State." 387 U.S. at 463, 87 S.Ct. at 1781 (emphasis added). Consequently, the Supreme Court concluded in Bosch that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should ... not be controlling." Id. at 465, 87 S.Ct. at 1782. While federal authorities are bound to apply state law as determined by the state's highest court, they need only give "proper regard" to relevant rulings of other courts in the state and "may be said to be, in effect, sitting as a state court." Id. In Bosch, therefore, the Court found that the IRS was entitled to make an independent assessment as to the validity vel non of the instrument under applicable state law as determined by the state's highest court.
 
 
 25
 We believe the ruling in Bosch supports the view that the Surrogate's decree is not conclusive and binding on the IRS under I.R.C. Sec. 2053(a)(2). Like the statutory provision at issue in Bosch, I.R.C. Sec. 2053(a)(2) gives no indication that Congress intended the Surrogate's decision to be preclusive. We conclude that, with regard to the federal deductibility of White's fees, the IRS is entitled to make an independent assessment of the validity of White's fees under applicable state law as determined by the state's highest court. Contrary to White's claim, the mere fact that the Surrogate issued a decree does not preclude the IRS from investigating the deductibility of White's fees under state law.
 
 
 26
 The district court in this case interpreted Bosch differently. Because the New York Court of Appeals has already set forth the factors to be considered when determining the validity of attorney's fees in estate practice, see In re Estate of Freeman, 34 N.Y.2d 1, 311 N.E.2d 480, 355 N.Y.S.2d 336 (1974), and since the Surrogate's letter to White stated that it had applied these factors, the district court concluded that the IRS is bound by the Surrogate's decision. 650 F.Supp. at 911 n. 7. We do not agree with this interpretation of Bosch. The Erie approach taken in Bosch assumes that state law, as announced by the state's highest court, is to be followed by both the state trial court and federal authorities. However, even assuming that the state trial court properly applied such state law, the Bosch court found that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should ... not be controlling." 387 U.S. at 463, 87 S.Ct. at 1782. Rather, federal authorities may make an independent examination of the state law as determined by the highest court of the state. Id. at 465, 87 S.Ct. at 1781-82. In this case, although the IRS is bound by the factors established by the New York Court of Appeals in Freeman, it is not bound by the Surrogate's application of these factors. Rather, according to Bosch, the Surrogate's ruling only need be given "proper regard" as one court's interpretation of applicable state law.
 
 
 27
 White and at least one amicus argue that the New York Court of Appeals may not overturn the Surrogate's factual determination of reasonableness, that as a practical matter that Court does not hear appeals from the Surrogate's determinations of fees, and that it has "delegated" its power to the Surrogate. While all this may be true, under New York law the Court of Appeals retains the authority to review a Surrogate's decision to ensure that it complies with New York law. That the Court rarely exercises its prerogative does not deprive the federal authorities of their jurisdiction to consider the same issues.
 
 
 28
 Subsequent to Bosch, we have stated that, even if proper regard is accorded to a state court's adjudication, "it would only be as valid as its evidentiary base," and that "[w]e have not hesitated to disregard state court judgments affecting federal tax liability where the factual questions involved were not contested in state court, see Lowe v. Commissioner, 510 F.2d 479 (2d Cir.), cert. denied, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975), or where a lower state court made an erroneous application of state law, see Cheng Yih-Chun v. Federal Reserve Bank, 442 F.2d 460 (2d Cir.1971)." United States v. Bosurgi, 530 F.2d 1105, 1112 (2d Cir.1976). It follows that the IRS is entitled to make an initial assessment of the "proper regard" to be accorded a state trial court decree in a particular case.
 
 
 29
 We note that, at this summons enforcement stage, the validity of the Surrogate's decree is not at issue. Since the purpose of a summons is "not to accuse, but to inquire," Bisceglia, 420 U.S. at 146, 95 S.Ct. at 919, the IRS is merely seeking to inquire into the factors that have a bearing on the deductibility of White's fees--this is not the same as accusing the Surrogate of error. Thus, our discussion of Bosch and subsequent cases is intended solely to demonstrate that, contrary to White's claim, the IRS may indeed inquire under Sec. 2053 into the allowability of White's fees under state law.
 
 
 30
 On the basis of the plain language of Sec. 2053(a)(2) and the Supreme Court's reasoning in Bosch, we conclude that there is no statutory support for White's proposition that the Surrogate's decree is binding on the IRS in subsequent federal tax proceedings nor for the assertion that the statute bars the IRS from investigating the deductibility of White's attorney's fees. As previously mentioned, however, the district court found support for White's proposition primarily in the statute's associated regulation, Treas.Reg. Sec. 20.2053-1(b)(2), which we consider next.
 
 2. Treasury Regulation Sec. 20.2053-1(b)(2)
 
 31
 Treasury Regulation Sec. 20.2053-1(b)(2), which is entitled "Effect of Court Decree," provides in relevant part:
 
 
 32
 The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed.... If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits.... The decree will not be accepted if it is at variance with the law of the State ... (emphasis added).
 
 
 33
 The district court concluded in light of this regulation that (1) the Surrogate having passed upon the facts upon which deductibility depends, and (2) in the absence of a prima facie showing by the IRS that the Surrogate's decision was motivated by factors other than those upon which deductibility depends, "such as fraud, overreaching, or excessiveness by the attorney or the Surrogate," the IRS was bound by the Surrogate's decision. 650 F.Supp. at 909. The district court therefore accepted White's claim that an IRS investigation of the deductibility of his fees would be pointless and hence it found that the IRS summonses were not issued for a legitimate purpose.
 
 
 34
 We believe that the district court erred in concluding that this regulation precludes the IRS from investigating the deductibility of White's fees under state law. The regulation merely parallels and elaborates on its related statute, I.R.C. Sec. 2053(a), and therefore, the principles discussed in Bosch are as applicable in the context of the regulation as they are in the statutory context. In stating that a local court decree "will not be accepted if it is at variance with the law of the State," the regulation, like the statute, when read in conjunction with Bosch, makes it clear that the IRS is entitled to make an independent assessment of applicable state law as interpreted by the state's highest court. Contrary to the district court's conclusion, and by analogy to Bosch, the regulation does not preclude the IRS from independently assessing the deductibility of White's fees under state law.
 
 
 35
 Moreover, the regulation authorizes the IRS to determine, prior to acceptance of a local court decree, whether or not that decree is at variance with state law. For instance, a local court decree may be at variance with state law if, in the district court's words, "the Surrogate's decision was motivated by factors other than those upon which deductibility depends, such as fraud, overreaching, or excessiveness by the attorney or the Surrogate." The decree may also be at variance with state law if the local court did not pass on the facts upon which deductibility depends, or if the consent given was not a bona fide recognition of the validity of the claim--these are questions regarding the proper application of state law that the regulation itself sets forth as standards to determine when the IRS should accept a local court decree. Also, these standards are consistent with our prior statement that a state court decree "would only be as valid as its evidentiary base" and may be disregarded "where [it is determined that] a lower state court made an erroneous application of state law." Bosurgi, 530 F.2d at 1112.
 
 
 36
 From the language of the regulation, it is clear that, while the IRS may "ordinarily" accept a local court decree, it is not required to do so if the decree did not properly apply state law. Rather, the regulation permits the IRS to make an independent assessment of the deductibility of White's fees under state law and to assess the acceptability of the Surrogate's decree for federal tax purposes. Since neither I.R.C. Sec. 2053 nor Treas.Reg. Sec. 20.2053-1(b)(2) precludes the IRS from investigating the deductibility of White's fees under state law, we conclude that White has failed to meet his burden of disproving the existence of a legitimate tax determination purpose.
 
 
 37
 The district court erred in requiring, as a prerequisite for summons enforcement, that the IRS make a prima facie showing that the Surrogate's decision was motivated by impermissible factors "such as fraud, overreaching, or excessiveness by the attorney or the Surrogate." This requirement is virtually the same as that advanced by the taxpayer in Powell, namely, that the IRS must make an advance showing of probable cause to suspect fraud. In Powell, the Supreme Court rejected such a standard because "it might seriously hamper the Commissioner in carrying out investigations he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate." 379 U.S. at 54, 85 S.Ct. at 253. Since we believe that the district court's requirement would be equally likely to hamper the IRS in carrying out investigations it thinks are warranted, and has already forced the IRS to litigate and prosecute an appeal on the very subject it desires to investigate, we reject the district court's new standard for enforcement of summonses as an invalid restraint on the summons power of the IRS.
 
 
 38
 Finally, the district court prematurely considered and decided the issue of whether the Surrogate "passed on the facts upon which deductibility depends." As previously stated, at this summons enforcement stage, the validity of the Surrogate's decree is not at issue. Rather, the IRS seeks to inquire into the factors that bear on the deductibility of White's fees, and not to accuse the Surrogate of error. See Bisceglia, 420 U.S. at 146, 95 S.Ct. at 918-19. Indeed, as far as we know, no record evidence, as such, had been presented to the district court that would have enabled it to decide whether the Surrogate passed on the facts upon which deductibility depends. The post hoc letter from the Surrogate justifying its decision is not sufficient to eliminate inquiry into whether the Surrogate actually considered the appropriate facts.
 
 
 39
 The function of the district court and of this Court in an enforcement proceeding is not to test the final merits of the claimed tax deduction, but to assess within the limits of Powell whether the IRS issued its summons for a legitimate tax determination purpose. We conclude from our review of I.R.C. Sec. 2053 and its associated regulation that, contrary to White's claim, the IRS has a legitimate purpose in investigating the deductibility of his fees. We further conclude that White has failed to meet his "heavy" burden of disproving the existence of a legitimate tax determination purpose for the IRS investigation.
 
 3. Relevance
 
 40
 In rebuttal to Serling's declaration of relevance, White argues that, even if the IRS may conduct an investigation, the only books and records that would be relevant to such an investigation are those of the Surrogate's Court, not his own. We disagree. In United States v. Arthur Young & Co., 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), the Supreme Court stated:
 
 
 41
 The language "may be" [in Sec. 7602] reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation.... The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized. As a tool of discovery, the Sec. 7602 summons is critical to the investigation and enforcement function of the IRS; the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.
 
 
 42
 Id. at 814, 104 S.Ct. at 1501 (emphasis in original). Clearly, White's books and records have "potential" relevance to an investigation to ascertain the deductibility of his fees under state law. The IRS need not establish more than that in a summons enforcement proceeding.
 
 C. Countervailing Policies
 
 43
 Thus far, White has failed to demonstrate that enforcement of the IRS summonses would constitute an abuse of the court's process. However, that does not automatically entitle the IRS to enforcement of its summonses; other considerations may bear on their enforceability. See United States v. Arthur Young & Co., 677 F.2d 211, 219 (2d Cir.1982), rev'd on other grounds, 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed. 826 (1984). In appropriate circumstances, the broad latitude given the IRS in the use of its summons power may be restricted in light of "substantial countervailing policies." Euge, 444 U.S. at 711, 100 S.Ct. at 878. The district court herein found that, in addition to the relevant statutory and regulatory provisions, principles of comity and federalism argued against allowing the IRS to "second-guess" the Surrogate's decisions. 650 F.Supp. at 909. As examples of the respect accorded state judgments by federal courts, the district court cited, inter alia, the eleventh amendment, the full faith and credit statute and federal common law rules of preclusion.
 
 
 44
 In establishing what it considered to be the proper balance between federal and state interests in this proceeding, the district court relied on Justice Harlan's dissent in Bosch. Id. at 910. In Bosch, Justice Harlan stated:
 
 
 45
 the federal interest requires only that the Commissioner be permitted to obtain from the federal courts a considered adjudication of the relevant state law issues in cases in which ... the state courts have not already provided such an adjudication. In turn, it may properly be assumed that the state court has had an opportunity to make, and has made, such an adjudication if, in a proceeding untainted by fraud, it has had the benefit of reasoned argument from parties holding genuinely inconsistent interests.
 
 
 46
 387 U.S. at 480-81, 87 S.Ct. at 1790-91. Relying on Justice Harlan's reasoning, the district court formulated a new standard for enforcement of a summons: in order to "challenge" a decision of the Surrogate when the Surrogate has passed on the facts upon which deductibility depends, "the IRS must make a prima facie showing that the Surrogate's decision was motivated by factors other than those on which deductibility depends, such as fraud, overreaching, or excessiveness by the attorney or the Surrogate." 650 F.Supp. at 911. However, it is the reasoning of the majority in Bosch, and not that of the dissent, that is controlling.
 
 
 47
 On the facts presented, we are not persuaded that federalism and comity constitute a "substantial countervailing policy" that would justify imposing a requirement upon the IRS to make an advance showing of factors "such as fraud, overreaching, or excessiveness by the attorney or the Surrogate" before granting enforcement of its summonses. Unquestionably, in proper circumstances, federal courts are bound to respect the considered judgment of state courts. However, the facts of this case do not implicate the eleventh amendment, full faith and credit, principles of collateral estoppel, or other doctrines arising from principles of federalism and comity; consequently, federal authorities are not bound to give preclusive effect to the Surrogate's decree.
 
 
 48
 Instead of substantial countervailing policies, we find in I.R.C. Sec. 7602 "a congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry." Arthur Young, 465 U.S. at 816, 104 S.Ct. at 1502 (emphasis in original). The Supreme Court informs us that "In light of this explicit statement by the Legislative Branch, courts should be chary of recognizing exceptions to the broad summons authority of the IRS.... If the broad latitude granted to the IRS by Sec. 7602 is to be circumscribed, that is a choice for Congress, and not this Court, to make." Id. at 816-17, 104 S.Ct. at 1502.
 
 CONCLUSION
 
 49
 While we appreciate the concern of the amici and acknowledge that one may well wonder whether the IRS in the Buffalo area is allocating wisely the time and effort of its limited staff, nevertheless, in the absence of substantial countervailing policies, and in the absence of a showing that enforcement of the summonses would constitute an abuse of the court's process, we conclude that the IRS is entitled to enforcement of its summonses. Accordingly, we reverse and remand with directions that the district court grant the petition for enforcement.