ESTATE OF NATHANIEL COLE, DECEASED, MARIA COLE, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GARY M. DEVORE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cole v. Commissioner
Docket Nos. 362-70; 5664-74
United States Tax Court
T.C. Memo 1989-623; 1989 Tax Ct. Memo LEXIS 625; 58 T.C.M. (CCH) 715; T.C.M. (RIA) 89623; November 20, 1989
Leo Branton, Jr., for the petitioners. Erik P. Doerring and Ann M. Murphy, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: * Respondent determined a deficiency of $ 2,338,591.05 in the Federal estate tax of the estate of Nathaniel Cole and determined a deficiency in Gary M. Devore's Federal income tax of $ 135,302 and *627 an addition to tax of $ 6,765 under section 6653(a) [1] for the calendar year 1970. Many of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: (1) Whether the estate of Nathaniel Cole (petitioner or the estate) is entitled to deductions under section 2053 for certain claims made against the estate; (2) whether $ 210,000 petitioner Gary M. Devore received from Anglo Dutch Capital Company in 1970 is taxable income to him; and (3) whether Gary M. Devore is liable for an addition to tax under section 6653(a) for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2]
*628 Nathaniel Cole (Mr. Cole or decedent), an entertainer popularly known as Nat "King" Cole, was a resident of California when he died testate on February 15, 1965. Mr. Cole's widow, Maria Cole (although Maria Cole remarried she will be referred to herein as Mrs. Cole or the executrix), who subsequently married Gary M. Devore (Mr. Devore), was executrix of the estate of Nathaniel Cole. The executrix filed a Federal estate tax return on behalf of the estate with the office of the District Director of the Internal Revenue Service, Los Angeles, California, on November 16, 1966. Mr. Devore filed an individual Federal income tax return for his taxable year 1970 with the office of the District Director of the Internal Revenue Service, Los Angeles, California. Mr. Devore and the executrix resided in California at the time their respective petitions were filed with this Court. Mr. Cole's will was admitted to probate in the Superior Court of the State of California for the County of Los Angeles (Superior Court) on March 23, 1965. Letters testamentary were issued to Mrs. Cole on that date recognizing her as executrix of the estate. Various claims were filed against the estate. Those *629 claimed debts of decedent that are at issue in this case were described in Schedule K of the estate tax return as follows: World Minerals N.V. - balance of principal
and interest due on Note dated 4/29/61,
assigned to Claimant from Albert Shell and
William Berman
130,000.00
Harry Margolis, - reimbursement for travel
expenses as attorney acting for decedent for
a period of two years prior to death
2,130.08
Universal Decoration Leasing Company -
personal loan made to decedent on 2/9/65
100,000.00
Aruba Bonaire Curacao Trust Company, Limited
- loan made by decedent 10/21/64 for use in
operation of Kell-Cole Productions, a 100%
owned corporation
50,000.00
World Minerals N.V. - 2 loans evidenced by
Promissory Notes - a loan of $ 150,000.00 -
Note dated 1/24/64, bearing 8% interest, with
interest accrued in the sum of $ 22,500.00,
and a second Note for $ 300,000.00 dated
1/1/65, with interest at 7% - interest
accrued in the sum of $ 14,000.00. Creditor's
Claim was filed for the sum of $ 486,500.00
but was settled for $ 475,000.00
475,000.00
Presentaciones Musicales S.A. - debt owed by
Kell-Cole Productions - guaranteed by
decedent, who owned 100% of its shares - debt
incurred in 1963
20,724.40
World Entertainers Ltd. - 2 loans made to K-C
Records, Inc. and guaranteed by decedent, who
was 100% shareholder - $ 5,000.00 loaned
11/18/63 on Note to bear interest at 7%;
$ 15,000.00 on Note dated 1/6/64, with
interest at 7%. Claim was for total of above
plus accrued interest in the sum of
$ 21,599.33, but was settled for $ 21,500.00
21,500.00
Claim of Associated Arts N.V. and
Koningsplein N.V. for $ 450,000.00 arising out
of a dispute concerning interests in certain
music publishing company copyrights owned by
decedent. Claimants filed a lawsuit to
compel arbitration in Los Angeles Superior
Court Case No. 874,961. Arbitrator
thereafter issued an Award to Claimants in
the sum of $ 328,000.00, and said Award was
approved by the Los Angeles Superior Court in
said case No. 874,961 on 10/4/66
328,000.00
*630 Because of community property considerations, from the amount of the gross estate reported on the return, only one-half of the listed amounts were deducted in arriving at the amount of the taxable estate. The executrix filed a "FIRST AND FINAL ACCOUNT AND REPORT OF EXECUTRIX AND PETITION FOR SETTLEMENT, FOR ALLOWANCE OF COMMISSIONS AND FEES, AND FOR INSTRUCTIONS ON WAIVER, AND FOR FINAL DISTRIBUTION" (account and petition) with the Superior Court on December 15, 1967. In the account and petition, the executrix represented that all of the above claims, with the exception of the claim of Associated Arts N.V. and Koningsplein N.V., had been allowed by her as executrix of the estate, approved by the Superior Court, and paid. On December 28, 1967, the Superior Court approved the account and petition with an "ORDER SETTLING FIRST AND FINAL ACCOUNT AND REPORT OF EXECUTRIX, FOR ALLOWANCE OF COMMISSIONS AND FEES, FOR INSTRUCTIONS TO EXECUTRIX ON GRANTING OF WAIVER, AND FOR FINAL DISTRIBUTION UNDER WILL" (final order). The Superior Court ordered and adjudged that the administration of the estate was brought to a close, that the account and petition was "settled, allowed, and approved, *631 " and that all the acts and transactions of the executrix relating to the matters set forth in the account and petition were "ratified, confirmed, and approved." On December 20, 1965, Associated Arts and Koningsplein, as plaintiffs, filed a complaint in the Superior Court against the executrix as defendant. The complaint alleged that Mr. Cole and Associated Arts had entered into a written contract in 1961 relating to Mr. Cole's personal services, that Associated Arts had later assigned the contract to Koningsplein, and that Mr. Cole had breached the contract by not divesting himself of his interests in certain musical copyrights. Attached to the complaint was an unexecuted copy of the alleged contract, translated from the Dutch language. The complaint further alleged that the plaintiffs and defendant had agreed to submit to the jurisdiction of the Superior Court the question of whether the contract required the parties to enter into arbitration in the Netherlands Antilles. In their prayer for relief, the plaintiffs requested a declaratory judgment that the defendant was required to enter into such arbitration and requested in the alternative damages of $ 450,000. The answer to *632 the complaint was filed two days later. The answer denied that Mr. Cole had breached the contract and asserted that the contract's arbitration provisions applied only during the time the contract was in force, not after Mr. Cole's death caused the contract to expire. The answer confirmed the assertion in the complaint that the parties had agreed to let the Superior Court decide the question of whether the contract required the parties to enter into arbitration in the Netherlands Antilles. The Superior Court, on March 2, 1966, made findings of fact, including that: (1) Mr. Cole and Associated Arts had entered into a contract; (2) the contract required Mr. Cole to divest himself of all interests in the ownership and control of musical material subject to copyright; (3) Mr. Cole had still owned interests in musical copyrights at the time of his death; (4) the contract provided for mandatory arbitration between the parties, which the plaintiffs had demanded both before and after Mr. Cole's death; and (5) the plaintiffs had filed a claim against the estate that the executrix rejected on or about September 24, 1965. The remaining findings of fact, and conclusions of law, were as follows: *633 FINDINGS OF FACT
* * * II That an actual controversy exists between plaintiffs and defendant related to their rights and duties under the contract entered into between the parties. III That both plaintiffs and defendant, without waiving any of their rights under the contract, have agreed to submit to the jurisdiction of this Court the sole question of whether or not, under the terms of the contract, the defendant is required to enter into arbitration in the Netherlands Antilles, and both parties have agreed to be bound by that determination. IV That a judicial determination of the rights of the parties under the contract is required. CONCLUSIONS OF LAW
Based upon the foregoing Findings of Fact, the Court hereby makes the following Conclusions of Law: I That the Court has no jurisdiction to determine the controversy between the parties, and that the contract entered into between the parties requires arbitration proceedings in the Netherland-Antilles, pursuant to Paragraph 15 of said written contract, and the Plaintiff should have Judgment ordering and decreeing such arbitration. Several months later, on October 24, 1966, the Superior Court entered a *634 "JUDGMENT AFFIRMING AWARD OF ARBITRATOR" (affirming judgment), which provided in part that the estate was obligated to pay $ 328,000 to Associated Arts in full satisfaction of all Associated Arts claims relating to certain music companies and that Associated Arts would have a lien in the amount of $ 328,000 against certain of the stockholdings of the estate. The affirming judgment also referred to the parties' petitions concerning the arbitration award: 2. The Petition of Associated Arts N.V. and Koningsplein N.V. to Affirm Award in Part, and to Vacate Award in Part, is denied. 3. The Counter-Petition of Maria Hawkins Cole, as Executrix of the Estate of Nathaniel Cole, Deceased, to Affirm the Award In Its Entirety is granted, and Judgment is ordered on said Award * * * The account and petition, filed by the executrix with the Superior Court in December of 1967, recounted a history of the Associated Arts and Koningsplein claim, and represented: The Three Hundred Twenty-Eight Thousand ($ 328,000.00) Dollar Judgment has not yet been paid, but the claimants and plaintiffs in said lawsuit have agreed to allow the Estate to close, based upon the agreement of * * * [the executrix] *635 to personally assume the obligation of the Estate, and based further upon the agreement of the Trustees of the Trust to receive the residue of the Estate to assume the obligation of the debt of the Estate. The Estate is liable for said obligation, but the actual payment of the obligation is being delayed, with the consent of the claimants, until after distribution solely as an accommodation to the Estate in order to facilitate the closing of the Estate. The final order of the Superior Court, which approved the account and petition, made a conforming finding: 7. An additional claim of $ 328,000.00 by Associated Arts N.V. and Koningsplein N.V. has become a judgment against the Estate as a result of arbitration proceedings and litigation in Los Angeles Superior Court Case No. 874 961. Said claim has not yet been paid but the creditor has agreed to allow said Estate to close provided that the lien of said creditor applies and attaches to the assets herein distributed to the Trustees of the inter vivos trust to receive the residuary estate pursuant to the terms of decedent's Will and provided further that * * * [the executrix] personally assumes said obligation. Said Trustees *636 have agreed to accept such assets subject to said lien. Respondent in his notice of deficiency to the estate disallowed the claimed deductions by the estate of the eight items of claimed indebtedness of the estate set forth above. In 1970 Mr. Devore received two checks issued by Anglo Dutch Capital Company (ADC) and made payable to his order. The first check, in the amount of $ 10,000, is dated October 28, 1970. The second, in the amount of $ 200,000, is dated November 19, 1970. The signature on behalf of payor ADC reads "Harry Margolis" on both checks and Mr. Devore endorsed both checks to the order of Harry Margolis as "Trustee." The accounting records of ADC characterize these amounts as loans giving rise to notes receivable. The records indicate maturity dates of April 27, 1971, for the $ 10,000 amount and May 18, 1971, for the $ 200,000 amount. Mr. Devore did not report these amounts as income on his 1970 return. Mr. Cole, Mrs. Cole, and Mr. Devore were clients of the Harry Margolis law office, which represented and advised them on legal, tax planning, and financial matters. Harold M. Plant was a certified public accountant with the firm of Plant, Cohen & Company *637 when Mr. Devore's 1970 Federal income tax return was prepared, either by Mr. Plant personally or under his supervision. Mr. Plant performed professional services for Mr. Cole and Mrs. Cole from 1951 until Mr. Cole's death, including the receipt, deposit, and disbursement of Mr. Cole's income, the maintenance of books and records, the preparation of payroll tax and income tax returns, and assistance with insurance, investments, and miscellaneous financial matters. After Mr. Cole's death, Mr. Plant was involved with the estate's receipts and disbursements, including the preparation of checks for signature by the executrix. Mr. Plant continued to provide accounting services to Mrs. Cole for several years following Mr. Cole's death, including those years prior to and during her marriage to Mr. Devore. Mr. Plant either prepared or supervised the preparation of every tax return of Mr. Devore during the time he was married to Mrs. Cole. Mr. Plant gathered information for the preparation of tax returns based largely on cash basis books and records maintained in his offices. On occasion, for items relating to special tax planning, he received additional information from the Margolis law *638 office. Mr. Plant sometimes worked with Harry Margolis on professional matters concerning Mr. Cole and Mrs. Cole. Mr. Devore became personally involved in the preparation of his returns only if he paid for tax-related items out of personal funds, in which case Mr. Plant asked him for relevant information. Respondent in his notice of deficiency to Mr. Devore increased his income by $ 210,000 based on considering the two checks from ADC to Mr. Devore as income to him. OPINION Estate Tax Deductions
The estate tax return relating to Mr. Cole's estate listed as deductions various purported debts of decedent, many of which were disallowed by respondent in his notice of deficiency. After agreement of the parties as to the deductibility of certain alleged debts, the deduction of the eight claimed debts listed in our findings of fact remain in issue. For purposes of determining the taxable estate, permissible deductions from the value of the gross estate include claims against the estate that are allowable by the state law under which the estate is administered. Sec. 2053(a)(3); sec. 20.2053-1(a)(1), Estate Tax Regs. [3] When founded on a promise or agreement, however, *639 the deduction for such a claim is allowed only to the extent that it was contracted bona fide and for an adequate and full consideration in money or money's worth. Sec. 2053(c)(1)(A); sec. 20.2053-4, Estate Tax Regs. [4]
*640 The "bona fide" and "consideration" elements in section 2053(c)(1)(A) are related but separate requirements, and if either is missing the deduction fails under this section. Estate of Scholl v. Commissioner, 88 T.C. 1265, 1279 (1987). Moreover, the requirement of an adequate and full consideration in money or money's worth may not be predicated solely on the fact that the contract is enforceable under state law. UnitedStates v. Stapf, 375 U.S. 118, 130-131 (1963). The requirement of "consideration in money or money's worth involves a higher standard of consideration than that required to establish the validity of a contract under state law." Estate of Carli v. Commissioner, 84 T.C. 649, 658 (1985). Petitioner bears the burden of showing that a claim was a bona fide obligation supported by adequate and full consideration in money or money's worth. Estate of Tiffany v. Commissioner, 47 T.C. 491, 497 (1967). Petitioner contends that the claims against the estate should be permitted as deductions from the gross estate because the claims were bona fide, approved by the executrix, further approved by the Superior *641 Court, and actually paid. [5] We focus initially on the approval of the claims by the Superior Court. A state trial court decree having Federal estate tax implications does not automatically bind respondent if respondent was not a party to the proceeding. Commissioner v. Estate of Bosch, 387 U.S 456 (1967); Estate of Rowan v. Commissioner, 54 T.C. 633, 636-637 (1970). This principle applies specifically to the estate tax deductibility of items listed in section 2053(a), including claims against the estate. United States v. White, 853 F.2d 107, 113-115 (2d Cir. 1988); Estate of Lewis v. Commissioner, 49 T.C. 684, 688 (1968). The highest court of a State is the best authority on the law of the State; if that court has not decided the issue, then a Federal court must apply what it determines the state law to be after giving due consideration to the ruling of the lower court. Commissioner v. Estate of Bosch, supra at 465. *642 Section 20.2053-1(b)(2), Estate Tax Regs., describes how a court decree affects estate tax deductions under section 2053(a): The decision of a local court as to the amount and allowability under local law of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the *643 claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if it is at variance with the law of the State; as, for example, an allowance made to an executor in excess of that prescribed by statute. On the other hand, a deduction for the amount of a bona fide indebtedness of the decedent, or of a reasonable expense of administration, will not be denied because no court decree has been entered if the amount would be allowable under local law. [Emphasis supplied.] Clearly, if a local court does not adjudicate the merits of a claim, which typically would be the case in a nonadversarial proceeding, the presumption that the decision of the local court on allowability "will ordinarily be accepted" does not apply. Sec. 20.2053-1(b)(2), Estate Tax Regs.; Wolfsen v. Smyth, 223 F.2d 111, 113-114 (9th Cir. 1955); First-Mechanics Nat. Bank of Trenton v. Commissioner, 117 F.2d 127, 129-130 (3d Cir. 1940), affg. 40 B.T.A. 876 (1939). *644 Other than the Associated Arts and Koningsplein claim, discussed later, the record contains no evidence that the Superior Court in any way passed on the merits of any of the claims here in issue and, a fortiori, how any such decisions were reached. The Superior Court appeared merely to approve the claims as previously approved by the executrix. There was no compelling reason for the Superior Court to pass on the merits because, for all the record shows, this was not an adversarial proceeding. Admittedly, a decree rendered by consent of the parties will be presumed to represent a bona fide recognition of the validity of a claim, and satisfactory evidence to a court on the merits, if the consent was "given by all parties having an interest adverse to the claimant." Sec. 20.2053-1(b)(2), Estate Tax Regs. Petitioner made no such showing. For example, decedent's will and the final order of the Superior Court provide for a portion of the residual estate to be distributed to a trust, created on February 29, 1960, with decedent's minor children among the beneficiaries. The record does not indicate how the interests of the children were represented at the probate proceeding. Even *645 if the Superior Court had passed on the merits of the claims or issued a meaningful consent decree, this would not have relieved us of further analysis. Estate of Lewis v. Commissioner, supra at 688. In order to sustain petitioner's argument that state law approval of the claims has some measure of binding effect on respondent, we must consider how the highest court of California would rule on the allowance of the subject claims. As noted by the court in United States v. White, 853 F.2d at 115-116, "From the language of the regulation, it is clear that, while the IRS may 'ordinarily' accept a local court decree, it is not required to do so if the decree did not properly apply state law." Thus, we must apply the law as actually determined by the highest court of California or, in the absence of any such determination, apply what we determine the state law to be. Commissioner v. Estate of Bosch, supra at 465. Petitioner must supply us with the facts necessary to make the state law determination or fail in its burden of proof. In Estate of Rowan v. Commissioner, supra, involving a Federal estate tax deficiency, *646 we considered what property interests were held by a decedent under California law at the time of her death. We concluded first, under Bosch, that we were not bound by the decision of the local probate court. When we turned to the task of determining the applicable state law, we were faced with a factually deficient record that precluded any such determination. In deciding that the taxpayer consequently failed to carry the burden of proof, we stated that "law cannot be applied in the abstract; we must have presented the facts to which the law is to be applied." Estate of Rowan v. Commissioner, supra at 639. In the instant case, clearly there was no independent determination by the Superior Court of the merits of any of the claims here involved with the possible exception of the Associated Arts and Koningsplein claim and petitioner has shown us no facts with respect to these claims from which we can determine whether they are allowable under California law. The claim of Associated Arts and Koningsplein evolved differently than the other claims. Associated Arts and Koningsplein filed a "COMPLAINT FOR DECLARATORY RELIEF," later redesignated a "COMPLAINT *647 TO COMPEL ARBITRATION," with the Superior Court on December 20, 1965. The complaint alleged that the plaintiffs and defendant executrix had agreed to submit to the jurisdiction of the Superior Court the question of whether the contract in question required the parties to enter into arbitration in the Netherlands Antilles. The answer to the complaint, filed two days later, confirmed that the parties wanted the Superior Court to decide whether the contract required arbitration. On March 2, 1966, the Superior Court made "FINDINGS OF FACT AND CONCLUSIONS OF LAW," determining that "the contract entered into between the parties requires arbitration proceedings in the Netherlands-Antilles." The final document relating to the arbitration proceedings of the parties is the affirming judgment, dated October 24, 1966. The Superior Court therein denied the petition of Associated Arts and Koningsplein to vacate the arbitrator's award in part. Instead, the Superior Court granted the counter-petition of the executrix to affirm the arbitrator's award in its entirety. The petition, the counter-petition, the written arbitrator's award, and the Superior Court transcript corresponding to the affirming *648 judgment are not in the record nor does the record show why these documents were not offered in evidence by petitioner. Petitioner seeks to establish the estate tax deductibility of the Associated Arts and Koningsplein claim, like the other claims, based upon the approval of the claim by the Superior Court. In contrast to the other claims, the record does indicate that the Superior Court had occasion to address "the facts upon which deductibility depends" and "the merits of the claim." Sec. 20.2053-1(b)(2), Estate Tax Regs. Specifically, in concluding that it lacked jurisdiction to resolve the substance of the contract controversy, the Superior Court found that Mr. Cole and Associated Arts had entered into a contract and that the contract provided for mandatory arbitration. This is consistent with California law, which requires a court to order arbitration if, among other things, "it determines that an agreement to arbitrate the controversy exists." Cal. Civ. Proc. Code sec. 1281.2 (West 1982). The Superior Court, in its affirming judgment, also apparently decided on the "merits" of the petition seeking to vacate the arbitrator's award in part. This *649 apparent comprehensive determination on the merits, however, is not what it might appear to be. For example, that Mr. Cole and Associated Arts had entered into a contract was disputed by neither of the parties in their Superior Court arbitration pleadings. Thus, the parties did not compel a resolution of this issue in an adversarial setting and the Superior Court may not have substantively addressed it at all. Regardless of the nature or the extent of the Superior Court determinations, the overriding and principal focus of state law allowability under section 2053(a) is the highest court of California, not the Superior Court. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); Estate of Lewis v. Commissioner, 49 T.C. 684, 688 (1968). In the context of the Associated Arts and Koningsplein claim, we must determine what issues relating to arbitration and state law allowability were subject to review by California appellate courts. The law is well settled in California that courts ordinarily may not interfere with arbitration awards. Santa Clara-San Ben. Chap., Etc. v. Local U. No. 332, Etc., 40 Cal. App. 3d 431, 114 Cal. Rptr. 909, 912 (1974). *650 Neither the merits of the arbitration award nor the sufficiency of the evidence to support the award are matters for judicial review, even by the Superior Court in this instance. Morris v. Zuckerman, 69 Cal. 2d 686, 446 P.2d 1000, 1004, 72 Cal. Rptr. 880, 884 (1968); Lesser Towers, Inc. v. Roscoe-Ajax Construction Co., 271 Cal. App. 2d 675, 77 Cal. Rptr. 100, 116-117 (1969); Pacific Vegetable Oil Corp. v. C.S.T., Ltd., 29 Cal. 2d 228, 174 P.2d 441, 448 (1946); Crofoot v. Blair Holdings Corp., 119 Cal. App. 2d 156, 260 P.2d 156, 172 (1953). A court such as the Superior Court here may determine, however, whether grounds for vacating an arbitrator's award exist, if so petitioned by one of the parties. Cal. Civ. Proc. Code secs. 1285.8, 1286.2, 1286.4 (West 1982). The court will vacate the award if it determines that: (a) The award was procured by corruption, fraud or other undue means; (b) There was corruption in any of the arbitrators; (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; (d) The arbitrators exceeded their powers and *651 the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [Cal. Civ. Proc. Code sec. 1286.2 (West 1982).] If the court confirms an arbitrator's award, in the face of a petition to vacate, the judgment entered may be appealed. Cal. Civ. Proc. Code secs. 1287.4, 1294(d) (West 1982); Wheeler v. St. Joseph Hospital, 63 Cal. App. 3d 345, 133 Cal. Rptr. 775, 793 (1976); Lesser Towers, Inc. v. Roscoe-Ajax Construction Co., 77 Cal. Rptr. at 102. Prior to the affirming judgment of the Superior Court, Associated Arts and Koningsplein apparently submitted a petition to vacate the arbitrator's award in part. "The only grounds upon which a court -- trial or appellate -- may vacate an arbitration award are set forth in Code *652 of Civil Procedure section 1286.2." Lindholm v. Galvin, 95 Cal. App. 3d 443, 157 Cal. Rptr. 167, 171 (1979). Therefore, we must assume that the grounds for the Associated Arts and Koningsplein petition were contained in that section. In order to resolve the allowability of this claim under state law, we must determine how the highest court of California would have ruled on the petition to vacate. There is no evidence in this record from which we can make this determination. The record does not show the specific grounds upon which Associated Arts and Koningsplein relied in petitioning to vacate in part the arbitrator's award. Even if the precise grounds were shown, the record is barren of evidence to evaluate those grounds. The record lacks the written arbitrator's award, the counter-petition of the executrix, and a transcript of the Superior Court hearing that led to the affirming judgment. We note further that the affirming judgment lacks findings of fact and conclusions of law ordinarily required by California law. Cal. Civ. Proc. Code sec. 1291 (West 1982). Such findings and conclusions may be waived, as the parties did here *653 according to the affirming judgment. Stermer v. Modiano Construction Co., 44 Cal. App. 3d 264, 118 Cal. Rptr. 309, 314 (1975). Nonetheless, the waiver causes the record to be incomplete. Petitioner would face additional hurdles even if the record did show that the Superior Court had passed on the merits of the claims and that the highest court of California would also allow the claims against the estate. [6] Section 20.2053-1(b)(2), Estate Tax Regs., describing the effect of a court decree, applies to the general provisions in section 2053(a) and (b) that, as pertinent here, permit the deduction of "claims against the estate" that are allowable under state law. This regulation does not purport to override section 2053(c)(1)(A), which requires claims founded on a promise or agreement to be "contracted bona fide and for an adequate and full consideration in money or money's worth." Furthermore, as noted above, an "adequate and full consideration" for purposes of section 2053(c)(1)(A) is a higher standard of consideration than that required to establish the validity of a contract under state law. Estate of Carli v. Commissioner, 84 T.C. 649, 658 (1985). *654 As described in the estate tax return, each of the subject claims against the estate was founded on a promise or agreement. Therefore, petitioner bears the burden of establishing both a bona fide contract and consideration within the meaning of section 2053(c)(1)(A). Estate of Scholl v. Commissioner, 88 T.C. 1265, 1279 (1987); Estate of Tiffany v. Commissioner, 47 T.C. 491, 497 (1967). Although the Associated Arts and Koningsplein claim was ultimately resolved through a lawsuit and arbitration proceeding, this does not render section 2053(c)(1)(A) inapplicable. Young v. United States, 559 F.2d 695 (D.C. Cir. 1977). "Even where a claim is ultimately satisfied by the operation *655 of law, the courts will determine the nature of the claim for federal tax purposes by examining the particular status of the claimant that enabled him to impose his claim on the estate." (Fn. ref. omitted.) Bank of New York v. United States, 526 F.2d 1012, 1017 (3d Cir. 1975). In attempting to meet this burden under section 2053(c)(1)(A), petitioner relies on a "Creditor's Claim" form (claim form) for each claim, as on file with the Superior Court. Each of these claim forms contains some description of the grounds for the claim and most have supporting affidavits, letters, or copies of notes. Respondent does not dispute that the claim forms are authentic public records of the Superior Court and are in evidence to show that claims were filed. Respondent objects to the claim forms as evidence as to the truth of the statements contained therein on the ground that these statements are hearsay within hearsay, otherwise known as multiple hearsay. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove *656 the truth of the matter asserted." Hearsay is generally not admissible except as provided by the Federal Rules of Evidence. Fed. R. Evid. 802. If offered to prove that claims were actually filed with and approved by the Superior Court, the claim forms offered by petitioner are hearsay under Fed. R. Evid. 801(c). Nonetheless, the claim forms are public records, as conceded by respondent, and are admissible for these limited purposes. Fed. R. Evid. 803(8). However, these limited purposes will not suffice to meet petitioner's burden of proving that the claimed indebtedness was bona fide and contracted for an adequate and full consideration in money or money's worth as required by section 2053(c)(1)(A), nor to show that the claim would be allowable under state law as required by section 2053(a). To contribute meaningfully to establishing these facts the statements within the claim forms must be admissible to prove the truth of the matters there asserted. Fed. R. Evid. 805 makes it clear that hearsay within hearsay is not admissible unless *657 each of the hearsay components independently satisfies an exception to the hearsay rule. United States v. De Peri, 778 F.2d 963, 976-977 (3d Cir. 1985); United States v. Ruffin, 575 F.2d 346, 357 (2d Cir. 1978). Thus, a statement on a claim form (e.g., the statement of the Superior Court that it approves the claim) based upon statements made by other persons (e.g., the claimant's statement that it has a legitimate claim) is multiple hearsay if offered to prove the truth of the matters asserted by such other person (e.g., that the claimant has a legitimate claim). Supporting affidavits, letters, and copies of notes in the claim forms are likewise subject to the restrictions of Fed. R. Evid. 805. Unless petitioner, as proponent of the claim forms in question, shows that the claim forms come within an exception to the hearsay rule at this second level, the matters asserted at this second level are not admissible evidence. Petitioner contends that several hearsay exceptions in Fed. R. Evid. 803 overcome respondent's multiple hearsay objection. Petitioner refers specifically to *658 Fed. R. Evid. 803(6), 803(16), and 803(24). Fed. R. Evid. 803(6) provides an exception to the hearsay rule for the records of a regularly conducted business activity. [7] The statements and affidavits in the claim forms have not been shown to be business records of decedent or the claimants. Also, petitioner failed at trial to introduce the "testimony of the custodian or other qualified witness" necessary to establish the requisite elements for the second-level hearsay. This exception, accordingly, does not apply. Hall v. Commissioner, 729 F.2d 632, 634 (9th Cir. 1984); Karme v. Commissioner, 673 F.2d 1062, 1064 (9th Cir. 1982), affg. 73 T.C. 1163 (1980); Petzoldt v. Commissioner, 92 T.C. 661, 676-677 (1989). *659 Fed. R. Evid. 803(16) treats as an exception to the hearsay rule statements in a document in existence for at least 20 years if the authenticity of the document is established. The claim forms and attached documents were over 20 years old when offered at trial. Nonetheless, in our view the second-level hearsay is inadmissible under this rule for other reasons. First, petitioner has not shown that the declarants of the second-level statements, specifically the claimant representatives who executed the claim forms, had firsthand knowledge. "In a hearsay situation, the declarant is, of course, a witness, and neither this Rule [Fed. R. Evid. 803] nor [Fed. R. Evid.] Rule 804 dispenses with the requirement of firsthand knowledge." Advisory Committee's Note to Fed. R. Evid. 803. The standard declaration on the Superior Court claim form does not imply firsthand knowledge on the part of the person signing for a non-individual claimant, except in the case of "offsets": I, the undersigned state: That I am [capacity and type of entity] and *660 for that reason make this affidavit on behalf of the claimant herein; the amount set forth in said claim is justly due to said claimant; no payments have been made thereon which are not credited and there are no offsets to my knowledge. A second problem for petitioner under Fed. R. Evid. 803(16) is that the statements in the claim forms are not separated in time from the present proceeding in the meaningful way that the rule contemplates. "Age affords assurance that the writing antedates the present controversy." Advisory Committee's Note to Fed. R. Evid. 803(16). See Compton v. Davis Oil Co., 607 F. Supp. 1221, 1229 (D. Wyo. 1985). In a very real sense, the statements in the claim forms and the present proceeding are contemporaneous. Both relate to the same event and date, Mr. Cole's death on February 15, 1965, and both relate broadly to the legitimacy of the claims. It surely was not unforeseeable at the time the claims were filed that this Court or some other court would one day be involved in assessing the substance of those claims. On a related point, because of the longstanding connection *661 of petitioner's counsel to this case, we find it particularly inappropriate to grant petitioner the benefit of this exception to the hearsay rule. Counsel for petitioner was the attorney of record when the petition was filed with this Court in 1970. Absent a showing that proof available in 1970 is no longer available, a showing that petitioner did not make, we decline to permit petitioner to benefit from this exception, which plainly was not available in 1970 for statements then less than 10 years old. Petitioner's final argument for admissibility of second-level hearsay in the claim forms is the "residual" hearsay exception of Fed. R. Evid. 803(24). In order for the second-level hearsay to be admissible under this exception, petitioner must show for each statement that: (1) the statement has "circumstantial guarantees of trustworthiness" equivalent to those of the other exceptions in Fed. R. Evid. 803; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; *662 (4) the general purposes of the rules of evidence and the interests of justice will be served by admission of the statement into evidence; and (5) petitioner has made the statement known to respondent sufficiently in advance of trial to provide respondent with a fair opportunity to prepare to meet it. Fong v. American Airlines, Inc., 626 F.2d 759, 763 (9th Cir. 1980); United States v. Mathis, 559 F.2d 294, 298 (5th Cir. 1977). The second-level hearsay in the claim forms appears to satisfy at least two of these requirements, the first of which is materiality. Petitioner bears the burden of demonstrating that each of the claims against the estate was the result of a bona fide obligation for an adequate and full consideration within the meaning of section 2053(c)(1)(A). Statements within the claim forms describe certain details of transactions and agreements, and the circumstances under which they arose. If admissible, these statements would therefore be evidence of material facts. The fifth requirement, advance notice to the adverse party, should also be considered satisfied. The record does not disclose when petitioner made known to respondent *663 either the existence of the claim forms or petitioner's intention to rely on statements therein. Respondent objected to admissibility of the claim forms as direct evidence of matters asserted therein, but did not argue, at trial or on brief, the denial of a fair opportunity to respond. Indeed, nearly two months passed between petitioner's offer of the claim forms into evidence and the next trial session before this Court. Furthermore, the claim forms were matters of public record and respondent had known of the Superior Court proceedings, at least constructively, since the filing of petitioner's estate tax return in 1966. Under these circumstances, respondent was not prejudiced and in our view the advance notice condition should be treated as satisfied. United States v. Bailey, 581 F.2d 341, 348 (3d Cir. 1978); United States v. Iaconetti, 540 F.2d 574, 578 (2d Cir. 1976), cert. denied 429 U.S. 1041 (1977); United States v. Leslie, 542 F.2d 285, 291 (5th Cir. 1976). Contrary to petitioner's unembellished assertion on brief that "the trustworthiness and probative value of the documents is beyond dispute," we conclude *664 that these elements are lacking for the second-level hearsay at issue. In Goldsmith v. Commissioner, 86 T.C. 1134, 1141 (1986), we stated: The requirement that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts" requires a consideration of two factors: (1) The availability of other evidence on a particular point; and (2) whether such other evidence can be procured through reasonable efforts. * * * As to the second factor, it is insufficient merely to state, as respondent does, that the proffered exhibits are the most probative evidence which can be procured "through reasonable efforts." Some indication of what reasonable efforts have been undertaken is essential. Courts have, in fact, construed the term "reasonable efforts" to require deposition of the statement declarant, procurement of alternative documentary evidence, or testimony of knowledgeable persons other than the declarant concerning the material facts. * * * [Emphasis supplied.] See also United States v. Kim, 595 F.2d 755, 766 (D.C. Cir. 1979). Petitioner has not attempted *665 to explain how these two factors apply to the claims at issue. Rather, petitioner apparently asks us to infer that more probative evidence is not available or, if it is available, that it cannot be procured through reasonable efforts. It is incumbent on petitioner to produce evidence of these facts if they are the facts. Cf. Goldsmith v. Commissioner, supra at 1140 ("Given the narrow intended application of this exception, respondent's attempt to rely on it for the wholesale admission of broad categories of documents is inappropriate." [Fn. ref. omitted]). The statements in the claim forms were over 20 years old at the time of trial and some of the claimants were characterized by statements in the claim forms as foreign entities, not subject to process of this Court. These factors might be significant for admissibility under Fed. R. Evid. 803(24) in some instances. E.g., Karme v. Commissioner, 73 T.C. 1163, 1181 (1980), affd. 673 F.2d 1062 (9th Cir. 1982) (foreign entities); United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984) (foreign residents); cf. Dallas County v. Commercial Union Assurance Co., 286 F.2d 388, 396 (5th Cir. 1961) *666 (passage of time). Petitioner cannot prevail on this probative value requirement, however, without making the "essential" showing we described in Goldsmith, especially in view of counsel for petitioner's involvement with this case since 1970. Far from making this showing for all the claims, petitioner has failed to describe reasonable efforts for any of the claims. For example, claimant Universal Decoration Leasing Company is represented to be a California corporation on its claim form, yet petitioner offers no explanation for the failure to seek out alternative evidence. Similarly, the purported assignors of the World Minerals claim in the amount of $ 130,000, who would be in perhaps the best position to testify about the bona fides and consideration involved in the original transaction and the assignment, were two married couples. Petitioner has given us no indication that these four people were residing abroad, deceased, or otherwise unavailable to testify at the time of trial. Other examples of petitioner's lack of demonstrated diligence in this regard concern Harold Plant and counsel for petitioner. Statements in the claim forms indicate that counsel for petitioner *667 had firsthand knowledge of some of the claims. Although respondent apparently refused to agree to counsel for petitioner's testifying, the record discloses no attempt to pursue alternate means of submitting the testimony. According to his own testimony, Mr. Plant performed various accounting services for Mr. Cole during the times that the claim forms show the claims arising. According to statements in the claim forms, Mr. Plant had at least some firsthand knowledge of the Universal Decoration Leasing Company claim and substantial firsthand knowledge relating to the claim of Aruba Bonaire Curacao Trust Company Limited. Although Mr. Plant testified before this Court on two occasions, he was not asked about either claim. Based on our reading of the trial transcript, Mr. Plant appears to have been lucid and cooperative, with no obvious signs of an impaired memory or faulty perceptions. The record does not show why he failed to testify about these claims and possibly some of the other claims of which he should have had knowledge if in fact the claims were bona fide. Petitioner has failed to make the essential showing on probative value required by this Court in Goldsmith. United States v. Mathis, supra at 299. *668 The other requirement of Fed. R. Evid. 803(24) that we find lacking here is the first we listed, circumstantial guarantees of trustworthiness equivalent to the other exceptions in Fed. R. Evid. 803. In this regard, "The traditional exceptions to the hearsay rule depend for their support on circumstances such as belief of impending death, high degree of excitement, dependable written records, and so on, each of which tends to support otherwise untrustworthy hearsay evidence." Fong v. American Airlines, Inc., supra at 763. We have already rejected petitioner's arguments concerning the applicability of the exceptions in Fed. R. Evid. 803(6) and (16). Obviously, failure to satisfy other exceptions in Fed. R. Evid. 803 cannot by itself preclude the satisfaction of Fed. R. Evid. 803(24) in general or its "circumstantial guarantees of trustworthiness" component in particular. Otherwise, Fed. R. Evid. 803(24) would serve no useful purpose. Nonetheless, the *669 reasons that the other exceptions are inapplicable reasonably enter into our assessment of trustworthiness. For the business records exception of Fed. R. Evid. 803(6), we determined that petitioner omitted the testimonial foundation that normally imparts reliability to such records. Similarly, for the ancient document exception of Fed. R. Evid. 803(16), reliability is undermined because some material statements in the claim forms appear to be based on other than firsthand knowledge. In addition, the close and direct relationship between the claims and the proceedings before this Court largely negates the trustworthiness ordinarily inherent in statements made long before, and without an eye toward, litigation. A comprehensive assessment of trustworthiness should consider "'the nature -- written or oral -- and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which it was made. * * * Also significant are the knowledge and qualifications of the declarant.'" Herdman v. Smith, 707 F.2d 839, 842 (5th Cir. 1983), *670 quoting 4 J. Weinstein, Evidence, par. 803(24)[01], pp. 803-376-377 (1988 ed.). As to declarant motivation and nature of the statements, we note that the claimants were all acting in their pecuniary interests to recover debts allegedly owed them by decedent. Plainly self-serving statements have a taint of unreliability under Fed. R. Evid. 803(24). Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir. 1985). As to the circumstances under which the statements were made, we note that the adverse party with whom the claims originated (decedent) is obviously unavailable to confirm or contest the legitimacy or the consideration described in section 2053(c)(1)(A). Nonetheless, in view of petitioner's failure to provide us with affirmative indications of trustworthiness, coupled with petitioner's failure to establish a need under the probative value requirement, we must conclude that petitioner has failed to satisfy the trustworthiness component of Fed. R. Evid. 803(24). Because petitioner has not established the existence of a pertinent hearsay exception for the second-level statements in the *671 claim forms, we do not accept these statements as evidence in this case. Petitioner relies on our earlier decision involving the income tax of Mr. Cole for years prior to the year of his death to establish the bona fides of the claims here in issue. Estate of Cole v. Commissioner, T.C. Memo. 1973-74 (Cole I). Petitioner seeks to extract favorable elements from Cole I for use in this proceeding primarily on collateral estoppel grounds. Under the doctrine of collateral estoppel, a judgment in one suit precludes, in a subsequent suit, relitigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Commissioner v. Sunnen, 333 U.S. 591, 598 (1948). The doctrine may be invoked against parties to the earlier judgment, and their privies, provided that the judgment is final and was rendered by a court of competent jurisdiction. Peck v. Commissioner, 90 T.C. 162, 166 (1988); Gammill v. Commissioner, 62 T.C. 607, 613-615 (1974). The Supreme Court has used a three-part test for collateral estoppel: (1) Whether *672 the issues presented in the subsequent litigation are in substance the same as those resolved in the earlier case; (2) whether controlling facts or legal principles have changed significantly since the earlier judgment; and (3) whether special circumstances warrant an exception to the normal rules of preclusion. Montana v. United States, 440 U.S. 147, 155 (1979). Collateral estoppel may apply to matters of law, matters of fact, or mixed matters of law and fact. For factual matters, this Court no longer draws a distinction between "ultimate" facts and "evidentiary" facts, both now being subject to the doctrine. Meier v. Commissioner, 91 T.C. 273, 286 (1988). In the section 2053 context, petitioner argues that collateral estoppel precludes respondent from challenging certain arm's-length relationships, found in Cole I , between decedent and claimants against the estate. Significantly, no indebtedness of claimants other than World Entertainers, Ltd. was discussed or even mentioned in Cole I. Thus, the findings in Cole I do not assist petitioner in any way in meeting the burden of proof on the bona fides of the indebtedness or state *673 law allowability under section 2053(a) of the claims. In Cole I a loan from World Entertainers, Ltd. to K.C. Records is discussed. The issue in Cole I does not relate to the substance of the loan. In Cole I we held that Mr. Cole's guarantee of a loan of World Entertainers, Ltd. to K.C. Records did not increase his basis in K.C. Records, a subchapter S corporation. We found in Cole I that "The total of $ 20,000 was ultimately repaid by petitioners directly to World Entertainers, Ltd." In Cole I we stated that "Although Nathaniel Cole is now deceased, he will be referred to herein as petitioner since the issues herein deal primarily with his professional activities and Nathaniel and Maria Cole will be referred to as petitioners." In concluding that as of the end of K.C. Records' fiscal year ended January 31, 1964, K.C. Records was not indebted to Mr. Cole for the $ 20,000 based on his guarantee of its World Entertainers indebtedness, we stated that "There is no evidence that petitioner paid the obligation of K.C. Records to World Entertainers during K.C. Records' taxable year ended January 31, 1964, thereby causing K.C. Records to become indebted to petitioner *674 by subrogation." The inference from Cole I would be that Mr. Cole and Mrs. Cole paid the indebtedness of K.C. Records to World Entertainers sometime before Mr. Cole's death and when it was paid Mr. Cole had an asset of a debt from K.C. Records. Certainly nothing in Cole I supports petitioner's claim of an indebtedness of the estate to World Entertainers but rather if considered at all Cole I would support a contrary conclusion. Collateral estoppel does not apply to petitioner's position in this case as to the World Entertainers claim. Clearly, there is no collateral estoppel with respect to the alleged claim of Associated Arts and Koningsplein based on our decision in Cole I. If we assume for present purposes that a contract between decedent and Associated Arts which ultimately led to arbitration is the same one that was subjected to scrutiny in Cole I, which fact petitioner has not established, the provision involved in the instant case was not litigated or decided or even discussed in Cole I. The provision to which petitioner refers does not by its language create a liability of Mr. Cole to Associated Arts or Koningsplein. In fact it could as easily *675 establish liability of these entities to Mr. Cole. Cole I contains findings relating to Associated Arts and Koningsplein, prominent among them that decedent had not direct interest in either entity and that decedent entered into a contract with Associated Arts for "adequate consideration." However, there is no statement in Cole I that in any way discusses whether there is a liability of Mr. Cole to these entities which might be allowable under California law. We have already discussed the deficiencies in the record on this issue. Consequently, consistent with our decision in Estate of Rowan v. Commissioner, 54 T.C. 633, 639 (1970), we hold that petitioner has failed to carry the burden of proof regarding the estate tax deductibility of the Associated Arts and Koningsplein claim. The final order of the Superior Court indicates that the $ 328,000 claim of Associated Arts and Koningsplein remained unpaid at that time based on their agreement "to allow said Estate to close." The record does not disclose when, or if, that amoung was ever actually paid. In fact, there is no adequate showing of payment of the other claims here in issue. Petitioner attempts *676 to rely on the time between the date of Mr. Cole's death and the trial of this case to excuse the lack of evidence produced with respect to the claims here involved. However, the petition in this case was filed in 1970, at which time petitioner should have had all records involving the estate tax liability since the amount of that liability was still undetermined. If such records were available in 1970, petitioner has made no showing of why they were not preserved until the trial of this case. Based on petitioner's failure to introduce direct evidence of the transactions and agreements underlying the claims here involved, petitioner has failed to carry the burden of proof on any of the claims here in issue and we sustain respondent's disallowance of the deductions for the claims in computing the taxable estate. Respondent offered into evidence copies of five planning memoranda, typed on Margolis law office stationery, to demonstrate the control exercised by Harry Margolis over various entities both before and after decedent's death, including those entities that are claimants in the instant case. The memoranda were offered through the testimony of a trial attorney in the United *677 States Attorney's Office, who had uncovered and taken possession of the documents during discovery associated with another matter. Because Harry Margolis provided professional advice to decedent, including tax planning, by the use of the memoranda respondent seeks to negate any presumed legitimacy of the claims at issue. The parties devoted much trial time and substantial portions of their briefs to whether the memoranda are admissible. We do not decide that matter here because our disposition of the substantive tax issues, on burden-of-proof grounds, renders any such decision unnecessary. Unreported Income
Petitioner Devore (hereinafter Mr. Devore) acknowledged receiving $ 210,000 from ADC, during his taxable year 1970, that was not reported as taxable income on his 1970 income tax return. Respondent, in his notice of deficiency, determined that the $ 210,000 was reportable taxable income. Mr. Devore bears the burden of establishing that this amount was not taxable income. Welch v. Halvering, 290 U.S. 111, 115 (1933); Delaney v. Commissioner, 743 F.2d 670, 671-672 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Rule 142(a). *678 Mr. Devore testified at the original trial session that the checks in question represented loan proceeds. He further testified that, to the best of his recollection, the $ 10,000 check was used to open an escrow for a home that he and Mrs. Cole purchased in Massachusetts and the $ 200,000 check was used to complete the purchase payment. The checks were endorsed to Harry Margolis, according to Mr. Devore, because Margolis was handling the purchase transaction for him and Maria. Upon being recalled at the second trial session, Mr. Devore testified that the money was not income to him and that he had verified his recollection that the money was used to purchase the home in Massachusetts. He stated that he lacked any documentation of repayment, but claimed that the amounts were repaid. Apart from Mr. Devore's testimony, the only evidence in the record that supports a loan characterization for the $ 210,000 is an ADC ledger introduced through the testimony of Doxie Gore, who as an accountant was the custodian of certain books for ADC at the time the checks were issued. The promissory notes that purportedly correspond to the checks, however, are notably absent from the record. Also *679 lacking is any documentary evidence of repayment, even though nearly seven weeks passed between Mr. Devore's initial testimony and his recall, during which time he was refreshing his recollections and attempting to verify his initial testimony. This scarcity of evidence is particularly troubling in that Harry Margolis appeared on both sides of the transaction, first as signatory on the ADC checks and employer of Doxie Gore and second as the "Trustee" to whom Mr. Devore endorsed the checks. The substance of a transaction as a whole rather than its form determines its effect for Federal income tax purposes. Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945); Markosian v. Commissioner, 73 T.C. 1235 (1980). Respondent has challenged the substance of the alleged loans and Mr. Devore has failed to show that the substance of the transactions or even the form was a loan. Mr. Devore's testimony about the use of the funds is not directly relevant to the focus of our inquiry. Mr. Devore is apparently attempting to associate his transaction with a typical home purchase, which involves an arm's-length loan in both form and substance. The use of *680 the funds is not at issue here and Mr. Devore's testimony in this regard lends no support to his position. On the record before us, Mr. Devore has failed to carry his burden of proof. Negligence Addition of Mr. Devore
Section 6653(a) imposes an addition to tax whenever an underpayment is caused by negligence or intentional disregard of rules or regulations. For purposes of section 6653(a), negligence is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed correct and the taxpayer has the burden of proving the determination is erroneous. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Rule 142(a). Taxpayers have a duty to file complete and accurate tax returns and generally cannot avoid this duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 250-251 (1985); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978). *681 However, taxpayers may insulate themselves from negligence additions by good faith reliance on the substantive advice of professionals. Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976). To so insulate themselves, taxpayers must provide their agents with all relevant information necessary to prepare the return. Pessin v. Commissioner, 59.T.C. 473, 489 (1972). Mr. Plant, a certified public accountant, either prepared directly or supervised the preparation of Mr. Devore's 1970 income tax return. Although Mr. Plant testified that his office generally maintained cash basis books and records for clients as a primary information gathering device, he did not testify specifically about whether those books and records included the ADC transactions at issue here. Moreover, although Harry Margolis was involved in these ADC transactions and Mr. Plant occasionally sought additional information from Margolis, Mr. Plant's testimony about this source of information refers specifically to the Coles, not to Mr. Devore. Mr. Devore offered no evidence that he relied on Mr. Plant's substantive advice regarding these purported loans or that he even *682 provided Mr. Plant with the pertinent information. Mr. Plant, for his part, failed to establish that he had information relevant to these items. Accordingly, Mr. Devore has not carried his burden of proof on this issue and respondent's determination regarding negligence is sustained. Decisions will be entered under Rule 155. Footnotes
*. By order of the Chief Judge, these cases were reassigned to Judge Irene F. Scott for opinion and decisions. ↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue or, for the estate tax issues, in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The subject cases were consolidated with 11 others during trial and three rounds of briefing. By order of this Court dated August 10, 1989, these 11 other cases were severed from the consolidated group of cases. This severance, coupled with the disposition by agreement of the parties of several issues in the subject cases, results in the record containing much that relates to issues other than those we address herein.↩
3. Section 2053(a) provides as follows: (a) General Rule. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts -- (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. ↩
4. Section 2053(c)(1)(A) provides as follows: The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest.↩
5. We use the phrase "claims against the estate" here only for convenience. Unless otherwise clear from the context, the phrase does not imply deductibility under section 2053(a)(3).↩
6. Actually, petitioner need not show a decision on the merits, or even a favorable decision, at the Superior Court proceeding. "[A] deduction for the amount of a bona fide indebtedness of the decedent * * * will not be denied because no court decree has been entered if the amount would be allowable under local law." Sec. 20.2053-1(b)(2), Estate Tax Regs. We present the analysis this way merely because petitioner relies on the Superior Court decree.↩
7. The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Fed. R. Evid. 803(6)↩.